LEVI B. VILAS, Plaintiff in Error,

*vs.*

THOMAS REYNOLDS, Defendant in Error.

ERROR TO THE DANE CIRCUIT COURT.

A record of a town plot, though informal and not made in strict compliance with the statute, may be admissible in evidence merely to determine and identify the *locus in quo.*

A deed by a person, as president of a company, containing words of conveyance to the grantee of " all the estate," &c., " of the party of the first part, *and of his constituents*," carries not only such title as the company may have had in the premises, but such also as may have been vested in the person so executing the deed, in his individual character and capacity, at the time of the execution of the conveyance.

A judgment cannot be impeached in a collateral proceeding ; and if enough appears from the record to make out *prima facie* the existence of the judgment it will be deemed sufficiently established as a fact.

A levy upon the right, title, and interest of the defendant in execution in the land is a levy upon the land for all practical purposes, and a sale under such a levy is good.

It is not an essential requisite to the validity of the title under a sheriff's deed, that it should appear from the return that the defendant had no goods, or chattels subject to levy.

A provision of law that the real estate of the execution debtor should be sold in parcels, is a provision for his benefit, and may be waived by him ; and if the sale is collaterally attacked for non-compliance with such a provision, it is competent to prove such waiver by parol.

This was an action of ejectment brought by the defendant in error to recover lots 8 and 9, in block 58, in the village of Madison ; and was tried at the November Term, 1856, resulting in a verdict for the plaintiff in ejectment, and a judgment for possession, and costs.  To reverse this judgment this writ of error was sued out, and the proceedings of the circuit court, and on the trial, are exhibited in the bill of exceptions signed, from which it appears that upon the trial the plaintiff offered in evidence the record of a plot found in volume 2, page 1 of

Deeds, in the register's office in the county of Dane, and containing, as endorsed thereon, an acknowledgment and certificates, as follows:

" TERRITORY OF WISCONSIN, } ss.
    " *County of Dane,*

" To all to whom these presents shall come, greeting: know
" ye that I, Kintzing Pritchett, of the city of Detroit, county of
" Wayne, and state of Michigan, by Moses M. Strong, my
" attorney in fact, do acknowledge the within plat of the town
" of Madison, to be a true and correct plat of said town, and
" that all streets, alleys, avenues, public squares, and reserva-
" tions are intended, and hereby dedicated for the uses and
" purposes expressed on said map.

" In witness whereof I have hereunto set my hand and seal
" at Madison, in said county of Dane, this 9th day of October,
" 1839.

                    " KINTZING PRITCHETT, [SEAL]
            " By MOSES M. STRONG, his Attorney in fact.
" Signed, sealed, and delivered in presence of
    " EDWARD V. WHITON,
    " WILLIAM N. SEYMOUR.

" TERRITORY OF WISCONSIN, } ss.
    " *Dane County,*

" Be it remembered that before me, William N. Seymour, a
" justice of the peace, authorized to take the acknowledgment
" of deeds, in said county of Dane, on the 9th day of October,
" A. D. 1839, appeared Kintzing Pritchett, by Moses Strong,
" his attorney in fact, and made the foregoing acknowledgment
" by him subscribed.

                    " WM. N. SEYMOUR,
                        " Justice of the Peace."

" TERRITORY OF WISCONSIN, } ss.
    " *Dane County.*

" I, William N. Seymour, district surveyor of said county of
" Dane, do certify that the within is a true and correct plat or
" map of the town of Madison, in said county of Dane, and
" that all the streets and alleys, commons and public grounds,

" and all the in, and out, lots are particularly and correctly " described and set forth ; that the names of streets in said " town are the same as set forth on said plat. All the streets " are sixty-six feet wide, and all the avenues are one hundred " and thirty-two feet wide, except Sherman avenue, which is " sixty-six feet wide.

'' The course of Hamilton and Franklin streets is north and " south ; the course of King, Eagle, and Fulton streets is east " and west ; the course of Washington avenue and all streets " parallel with it is north 45 ° west, and south 45 ° east ; the " course of Rutledge street and Sherman avenue is the same as " the lake opposite them. The boundaries and extent of all " streets, avenues, and alleys is the same as represented on said " plat. I further certify that there is a stone planted and fixed " at the north corner of the public square of said town, which " is situated five hundred and sixty feet due north from the " corner of sections thirteen, fourteen, twenty-three, and twenty- " four, in town seven of range nine east.

" Given under my hand at Madison, in said county, this 9 th " day of October, A. D. 1839.

" WM. N. SEYMOUR,

Dist. Surveyor for Dane County."

To the reading of which record, acknowledgement, and certificate in evidence, the said defendant by his counsel, objected, which objection was overruled, by said circuit judge, and the same admitted in evidence, to which the said defendant then and there excepted.

The plaintiff also offered in evidence the record of a deed from said register's office, as follows, to-wit :

" This indenture, made the 25th day of February, in the " year of our Lord one thousand eight hundred and forty-three, " between James D. Doty, as president of the Four Lake " Company of the first part, and Nathan Goodell of Astor, " Brown Co., Wisconsin Territory, of the second part, wit- " nesseth : that the said party of the first part for and in con- " sideration of the sum of ten dollars to him in hand paid by " the said party of the second part, the receipt whereof is

"hereby confessed and acknowledged, has given, granted, bar-
"gained, sold, remised, released, aliened and confirmed, and
"by these presents does give, grant, bargain, sell, remise, re.
"lease, alien and confirm unto the said party of the second part,
"and to his heirs and assigns forever, all that certain lot or par-
"cel of land, situated in the town of Madison, in the county
"of Dane and Territory of Wisconsin, known, designated and
"described on the plat of said town, as being lots No. (8)
"eight and (9) nine, in block No. (58) fifty-eight according to
"the said plat, together with all and singular the hereditaments
"and appurtenances thereunto belonging or in any wise apper-
"taining, and all the estate, right, title, interest, claim- or
"demand whatsoever of the said party of the first part and of
"his constituents, either in law or equity, either in possession
"or expectancy of, in and to the above bargained premises
"and their hereditaments and appurtenances. To have, and to
"hold the said premises as above described with the heredita-
"ments and appurtenances unto the said party of the second
"part and to his heirs and assigns forever. And the said
"party of the first part, for himself, his constituents,, his heirs,
"executors and administrators, does covenant, grant, bargain
"and agree to and with the party of the second part, his heirs
"and assigns, that at the time of ensealing and delivering of
"these presents, he is well seized of the premises above des-
"cribed as of a good, sure, perfect, absolute and indefeasible
"estate of inheritance in the law in fee simple, and that the
"above bargained premises, in the quiet and peaceable pos-
"session of the said party of the second part, his heirs and
"assigns, against all and every person or persons lawfully
"claiming the whole or any part thereof, he will forever war-
"rant and defend.

"In witness whereof the said party of the first part has here-
"unto set his hand and seal the day and year first above writ-
"ten.

In presence, of &c.,         J. D. DOTY,   [SEAL]

          President and Trustee of the Four Lake Company."

To the reading of which in evidence the said defendant objected, which was overruled by the said circuit judge, and the same admitted in evidence, to which the defendant then and there excepted.

The defendant also offered in evidence a transcript of the record of a judgment, rendered in the district court of the Territory of Wisconsin, Brown county, on the 14th day of October, 1841, in favor of Alanson Sweet against James D. Doty, for the sum of $3,940.62½ damages, with $11.20 costs, which was docketed and filed in the office of the clerk of the district court of Dane county, December 6th, 1841.

From this record it appears that the suit was commenced by the service of a declaration, to which the defendant pleaded, and on issue joined verdict was rendered against the defendant, upon which there was an entry of judgment in the following words:

"And afterwards, to-wit: on the said (October 14th, 1841) "day and year last aforesaid, the court enter judgment for the "sum of three thousand nine hundred and forty dollars and "sixty-two and a half cents damages, with eleven dollars and "twenty and one-half cents costs, against the said defendant "in favor of said plaintiff." Certificate of clerk of Brown Co., district court, W. T. Which transcript was admitted in evidence by the court. The defendant also offered in evidence from the records in said register's office of Dane county the record of a sheriff's deed.

"This indenture made the seventeenth day of August, 1844, between Augustus A. Bird, sheriff of the county of Dane, W. T., and Barlow Shackelford of said county, witnesseth: That whereas, by virtue of two certain writs of *fieri facias*, *venditioni exponas*, one issued out of the District court of the county of Milwaukee, and dated the 16th day of June, 1842, and one out of the District court of the county of Brown, dated 27th of May, 1842, both in favor of Alanson Sweet, and against James D. Doty, and directed to the sheriff of said county of Dane, commanding him of the goods and chattels of the said

Doty, within said county of Dane, he should cause to be made the amount of money specified in said writ, and for want of said goods and chattels that he cause the amount to be made of the real estate of the said Doty within said county; and whereas (there being no goods and chattels of the said Doty whereon to levy, to satisfy said writ,) I, the said sheriff as aforesaid, having first given six successive weeks previous notice of the time and place of sale, according to the statute in such case made and provided, on the sixteenth day of August, A. D. 1842, between the hours of eleven and twelve A. M. of said day, offered for sale at public vendue to the highest bidder at the door of the capitol of said territory in Madison, being the court house for the said county of Dane, all the right, title, interest and estate which the said Doty had or may have had at the time of the filing and entering attested copies of the records of the judgments in said counties of Brown and Milwaukee by virtue of which, said executions were issued, in the clerk's office of the District court of said county of Dane, in and to the following described lots and parcels of land : Lots No. three and four and southwest quarter of section thirteen, township seven north of range nine east, lots Nos. one, two and three, of section fourteen in said township and range, lots Nos. one, two and three, and northeast quarter of northeast quarter, and west half of the northeast quarter of section twenty-three in said township and range. The whole of fractional section twenty four in said township and range. The northeast quarter of section one in said township and range. The southeast quarter of section thirty-two in township eight of range nine, and the southeast quarter of section seven in township eleven of range nine. Also, the undivided one half of the following tracts in township seven of range eight, the west half of the southwest quarter of section twenty, the east half of the southeast quarter of section nineteen, the west half of the southeast quarter of section twenty-four, the west half of the southeast quarter of section twenty-five, the west half of the northwest quarter of section twenty-nine and the east half of the northeast quarter of section thirty. All of which said tracts were

purchased by said Shackelford at said sale for the several sums specified in the certificate of sale given by said sheriff to said Shackelford on the 16th day of August A. D. 1842.

Now therefore I, the said Augustus A. Bird, sheriff as aforesaid, according to the statute in such case made and provided, and for and in consideration of the said several sums of money specified in said certificate have given, granted, bargained and sold, and by these presents do give, grant, bargain, sell and convey unto the said Shackelford, his heirs, and assigns forever, the above described lots and parcels of land, with all the right, title, interest and estate of the said Doty therein.

To have and to hold the same with all and singular the privileges and appurtenances thereunto belonging, to him the said Shackelford, his heirs and assigns forever.

In witness whereof, &c.

A. A. BIRD, Sheriff D. C.     (L. S.)

[This deed was duly acknowledged and recorded.]


To the admission of said deed in evidence the said plaintiff by his counsel did then and there object; which objection was sustained by the judge of said circuit court, and the same was rejected; to which the said defendant by his counsel did then and there except.

The defendant also offered in evidence the record of a certificate of sale made by Augustus A. Bird, sheriff of Dane county, of the lands and lots described in the sheriff's deed, under the writs mentioned in said deed, (which were also offered in evidence) unto the said Barlow Shackleford; and also called A. A. Bird, who made said sale as sheriff, and proposed to prove by said Bird that James D. Doty, the debtor in said execution, directed the levy and sale of the lands mentioned in said executions, and in said certificate of sale, in the manner and form in which the same were made, and that said Doty directed the whole sale.   To which the plaintiff objected, and was sustained in his objection by the circuit court, and the evidence excluded. To which decision the defendant excepted.

The defendant also offered to prove by the deposition of the

said J. D. Doty, the defendant in execution, that he consented to, and directed, the manner of selling the property (i. e., not in parcels, but according to the original surveys, after the tracts had been laid out into village lots,) as the same was sold by the sheriff; which deposition was, on objection by plaintiff, ruled out by the court, and exception taken by defendant.

*Roys and Pinney*, for plaintiff in error.

The record of the plat of the town of Madison, made by Pritchette, by M. M. Strong, his attorney, was improperly admitted in evidence for the plaintiff below, for the following reasons: 1. Before the *record* of that plat could be properly received in evidence, it should have clearly appeared to have been such a plat as the law authorized to be recorded. R. S. 1839, page 159.

2. The plat is deficient in many particulars. It does not appear on what lands the plat is located. If the lands entered by Doty and Mason, August 10, 1837, were the lands platted, then Pritchette only had Mason's half, and had no right to plat the whole. The plat does not give the names, width, courses and boundaries of all streets and alleys. R. S., 1839, page 159, §1. The precise length and width of the lots intended for sale are not stated on the plat. Id. §2. No stone or stones are planted and fixed by the proprietor for a corner, from which to make future surveys, and the point or points where they may be found designated on the plat. Id. § 3.

The deed from Doty, as president of the Four Lake Company, was improperly admitted. This deed was not the deed of Doty, as an individual, but the deed of the Four Lake Co., by their president and trustee, J. D. Doty; and until it was shown that the Four Lake Company owned the lots conveyed by the deed; and Doty was authorized by the company to make the conveyance, the deed was inadmissible. Doty does not pretend to convey the lots as his own, but executes the deed of the company, simply as their president and trustee. suppose an administrator should convey land, as such, should

it be said that his own title passed by the conveyance, or rather title of his intestate? And the personal covenants of Doty in the deed, do not make the same operative as his deed by way of enurement for the doctrine of enurement, only applies where it is the individual deed of the covenanter; and to prevent circuity of action, after an acquired title by the grantor shall enure to the benefit of the grantee. 13 Johns. R. 463-4, 9 Conn. 371-4. Rawle on Cov. 411, 6 Conn. 465.

The circuit judge erred in rejecting the sheriff's deed to Barlow Shakelford. The defendant below had introduced in evidence valid judgments and executions to support this deed, and as to levying and selling the lands by government descriptions, the sheriff could not lawfully do otherwise, since the Pritchette plat was not valid as a record, and was not even shown to cover these lands. 3 Mass., 227; 1 Humph., 80; 13 Iredell, 425. If the judgment and execution be good, the purchaser acquires a good title. 7 Wend., 83; *Evans vs. Wildex*, 5 Mis., 313; 8 Miss., 448; 6 Wend., 522; 5 John., Ch., 414; 18 J. R., 355; 7 Gill & Johns., 495th, 514. *Swiggart vs Harbor*, 4 Id., 364; 1 Pet., 340; 2 Id., 163, 169; 10 Id., 474.

The sheriff's deed was good between the purchaser and the judgment debtor, and could not be impeached in a collateral proceeding for any irregularity or error in the judgments, executions, levy or sale.

*Jackson vs. Rosevelt*, 13 J. R., 97; 7 Blackf., 154; 3 Gillman, 358; *Jackson vs. Astor.* Ter Doc., 1841, appx. to laws, 1842, p. 24.

The deposition of Doty was improperly rejected. This deposition showed that Doty directed the levy and sale of the lands mentioned in the sheriff's deed, and that the same was made for his benefit. This would cure the irregularities in the levy and sale if any existed. *Williamson vs. Logan*, 1 B. Monroe, 237; 2 Phil., on ev. Cow. & Hill's Notes, 644, 656; 4 Scam., 364; 3 Yeats, 268.

The circuit judge erred in rejecting proof by the sheriff that

Doty directed the sale, &c., and the re-offer of the sheriff's deed.

*Abbott, Clark and Coit,* for the defendant in error.

The plaintiff below objected to the *fi. fa.*, (as a basis of the *sheriff's deed,*) for the reason that the *levy* was *not* upon *land,* but only upon " the interest, etc." of the said Doty in certain lands, 1 Vermont, 138 ; Ib., 310 ; 9 Mass., 92. In these cases the levy is the particular thing passed upon and considered by the court, and the reasoning of the court would apply equally, whether the sheriff was to sell or appraisers set off the land *after* the levy, and if any difference, with greater force to a sale by the sheriff, as less guarded and more detrimental to the interest of the debtor. The sheriff's deed of course ceuld not be given in evidence, without first showing the judgment and execution under which the sale was made. *Dew vs. Wright et al.* Pet. C. C. Rep., 64.

Another objection to the sale was that it did not appear by the return of the sheriff, that there were no goods or chattels from which to make the money. It is necessary that the return of the sheriff on the *fi fa.* should show a compliance with the law, otherwise the levy and sale are void. *Williams vs. Amory,* 14 Mass., 20.

In the transcript from Brown county, there is no judgment, no "*ita consideratum est.*" of the court. 3 Wis., 362.

Another objection to the levy, and sale is that it was not made in parcels. This was one of the grounds upon which the court below ruled out the sheriff's deed. Rev. St. of 1839, p. 233, § 58 ; 2 Yeats, p. 516 and 518. J. Binney, 61 ; 7 Gill and Johns, 494 ; 1 Gillman, 435.

It appears that at the time of the sale the lands in question had been laid off into village lots, and were known as such. If in the language of the Ter. Rev. Stat., page 233, § 58, such lots were known divisions, it is sufficient to require the sheriff to sell by such known lots or divisions. The judgment debtor had a right to sell by such divisions and the purchaser to edeem his separate lot, which he could not do without redeeming

the whole lands sold under this sale. Thus the rights of the judgment debtor and of his grantee would be defeated if the sale by sections be sustained.

The plaintiff in error claims title to the lots in dispute, by virtue of deeds in which the premises are described as lots 8 and 9, block 58, etc., thereby recognizing the fact of the land being divided into lots and blocks, and known as such.

There is no return of the sheriff on the *vend. ex.* from Milwaukee county, of any sale. This defect cannot be supplied by parol or extraneous proof. 11 Wend, 14 Mass., 20.

The deed of Doty to Goodell was the deed of Doty in his individual capacity. He undertakes to convey the estate of the party of the first part, and of *his* constituents. Doty covenants for himself, his constituents, his heirs. All this shows that Doty made himself party of the first part, and was grantor, either solely, or with the Four Lake Co., which had no corporate or known existence. Hare & Wallace, Amer. Lead. Cas., Vol. I., p. 426–35; Paley on Agency, 381.

On estoppel, see Rawle on Cov. for Title, p. 400. 404, 421.

*By the Court,* COLE, J. From the view which we have taken of this case, we do not deem it necessary to examine, in detail, all the questions presented for our consideration, by counsel, upon the argument of the cause. The first point we feel called upon to notice, is that made as to the correctness of the ruling of the circuit court, in admitting in evidence the record of the plat of the town of Madison, which was offered by the plaintiff below. And one observation will be sufficient to dispose of the question arising upon this point. The admission of the record of the plat in evidence, was objected to upon the ground that the plat itself was defective in many essential particulars, for not complying with the statute in force at the time it was made, (R. S., T. W., 1839, page 149,) relating to the making and acknowledging of town

plots, and recording the same; and not being authorized by law to be recorded, a record of it, it was contended, was inadmissible in evidence. We presume the object of offering this record in evidence, was to determine the *locus in quo*—the place in which the premises claimed in the declaration were situated. The locality of the premises was a material point to be established. A witness familiar with them and with the plot, would be able to identify them from this record, and fix the locality where the disputed premises were situated. Conceding the plot was not originally made out according to law so as to entitle it to record, and that the record of it would be incompetent of itself to establish an independent fact, yet for the purpose for which it was used upon the trial of this case, merely to determine the locality of the premises by aid of other testimony, we think it was competent and proper. The plaintiff below, to make out his title to the property, introduced a deed from James Duane Doty to Nathan Goodell, conveying it—bearing date Feb. 25th, 1846, and derived title under that deed, by a conveyance from Goodell and wife, executed by their attorney, Henry S. Baird. The deed was signed by Doty as President and trustee of "Four Lake Company." The admission of the deed in evidence was objected to, but the objection was overruled, and an exception taken. It is now contended that the court erred in admitting this deed in evidence for the reason that it was not the deed of Doty, as an individual, but the deed of the "Four Lake Company," by their President and Trustee, J. D. Doty; and that until it was shown that the "Four Lake Company" owned the lots conveyed by the deed, and that Doty was authorized to convey them, the deed was inadmissible. The plaintiff showed that the title was in Doty in May, 1841, and insists that by his deed to Goodell, he conveyed to his grantee all the title which was vested in him as an individual, and as President and Trustee of the Four Lake Company. The proper construction of this deed therefore becomes an important question, not only from its bearing upon the case under consideration, but (as we were given to understand by the counsel,) from the amount of

property in the city of Madison held under like conveyances. Hence we have given this deed a very careful examination, and have arrived at the conclusion that the construction given the deed by the counsel of the plaintiff below, is the correct and proper construction to be placed upon it.

In the construction of deeds it is said to be a maxim of the highest antiquity in the law, that all deeds shall be construed favorably, and as near the apparent intention of the parties as possible, consistent with the rules of law. And when the intention is clear, too minute a stress ought not to be laid on the precise and strict meaning of words, and the intention is to be gathered from the entire deed, and not from the language of any particular part of it. 4 Cruise's Dig., Title 32, chap. 19; *Allen vs. Holton,* 20 Pick., 458. Keeping these familiar rules of construction in mind, we find upon examining this deed, that it purports to be a deed between James D. Doty as President of the Four Lake company, of the first part, and Nathan Goodell of the second part. The description of the parties and the style Doty has adopted in signing the deed, favor the idea that it was intended to be the deed of Doty in his representative, in contradistinction to his individual, capacity. But if we examine the granting part of the deed, and the estate conveyed, we find in substance the following language. That the said party of the first part for and in consideration, &c., gives, grants, bargains, sells, remises, releases, aliens, and confirms, unto the party of the second part, and to his heirs and assigns, the lots in controversy, with the hereditaments and appurtenances thereunto belonging, " and all the estate, right, title, interest, " claim, or demand whatsoever of the said party of the first " part and of *his constituents,* either in law or equity." By this language all the estate and interest of the party of the first part, and of *his constituents,* in the premises, passes to the grantee; a mode of expression entirely inconsistent with the idea that Doty conveyed in a fiduciary capacity alone. For if the party of the first part be indeed the Four Lake company, what was the estate and interest of the constituents in the premises? Who were the constituents referred to, if not the Four

Lake company? If the grant is to be limited to conveying only the title of the company, and if Doty was a fiduciary vendor alone, then the estate of the party of the first part, and the estate of the constituents, was one and the same estate, and the language of the deed becomes senseless and unmeaning. It would all pass in the grant of the estate of the party of the first part, and the subsequent grant of the estate of his constituents would be unnecessary and of no effect. We therefore think it manifest from this clause of the deed, that it was the intention of the parties that Doty should convey to his grantee, all the title and interest which might be vested in him individually, as well as all the title and interest which he might properly and lawfully convey as the President and Trustee of the Four Lake Company. And there is still another clause of the deed which goes strongly to support this construction. The covenants of the deed are as follows: The said party of the first part, for *himself*, *his constituents*, his heirs, executors and administrators, does covenant, grant, bargain, and agree, to and with the party of the second part, his heirs and assigns, that at the time of the ensealing and delivery of these presents, he is well seized of the premises described, as of a good, sure, perfect, absolute and indefeasible estate of inheritance; recognizing in this language, a distinction between the party of the first part and the constituents; showing that the covenantor expressly intended that his liability should be more than co-extensive with his fiduciary capacity, and that he was personally bound by the covenants. It has happened undoubtedly, that fiduciary vendors, from inadvertence or design, have entered into covenants of greater scope than the law exacted of them, and thereby become personally liable; but we think the fair inference in this case is, that the covenant was intended to be co-extensive with the estate granted, and not more so, applying to, and binding the individual and the company. So that to effectuate the intention of the parties, as that intention is gathered from the whole deed, we are of the opinion that it must be held to pass whatsoever title was in the grantor either personally or as trustee.

The defense set up was that all the right, title, and interest of Doty in the property had been legally levied upon and sold in 1842, by virtue of two several executions issued upon judgments against him, in favor of Alanson Sweet; and that this title had subsequently, by mesne conveyances, become vested in the defendant. A transcript of a judgment obtained in the district court of Brown county, and of a judgment obtained in Milwaukee county, were offered in evidence. Transcripts of the writs of execution, and of the sheriff's certificates of sale were also introduced. Various objections were taken to the admission of these transcripts, and were all properly overruled. We shall not stop now to consider these objections taken to the transcripts of the judgments further than to observe that we deem them competent and sufficient evidence in this action to show valid judgments against Doty. It is insisted however that the transcript from Brown county is not sufficient to show a valid judgment against Doty, for the reason that there is no order, consideration, or judgment of the court, that the plaintiff do recover, &c.; and we have been referred to the case of *Wheeler vs. Scott*, 3 Wis., 362, to support this position. The cases are not similar. In the case of *Wheeler vs. Scott*, the existence of a judgment was drawn in question by a direct issue, on a writ of error; and not collaterally, as in the present case, and the record sent up by the clerk did not show any final judgment. The writ of error was therefore dismissed. Enough appears from the transcript of the Brown county record to make out *prima facie*, at least, the existence of a judgment against Doty; which was all that was necessary until the record was impeached. *Atchinson vs. Roselip et al.*, 4 Chand., R. 12; *Jackson vs. Rowland*, 6 Wend., 666. It appears that although the transcripts of the writs of execution were admitted in evidence, still that the court rejected the sheriff's deed, for reasons which in part apply to the executions, as well as the deed. The deed is quite full and regular, reciting the substance of the executions, and the proceedings had by the officer under the executions down to, and including the sale. It has been contended that the sheriff's deed was properly rejected, because, from the

Vilas vs. Reynolds.

returns upon the executions, which were the foundation of the deed, it was apparent that the levy and sale were illegal and void. First it is objected that the levy was insufficient, because the return shows that it was not upon *the land* of Doty, but upon his *right and interest* in the land. We do not appreciate the force of this objection. We suppose, correctly and philosophically speaking, that it is the right, title, interest, or in other words, the property, of the defendant in lands, which is sold; and that although this interest and estate are really intangible, yet in common parlance, we say that it is the right, interest, or estate which is levied upon and sold. But only constructively or by figure of speech can it be said that an officer has seized upon, and taken into his possession, this interest; and by a still bolder figure, that he had levied upon (raised up *Fr. lever*), the land itself. But such refinements upon language are unprofitable and lead astray, when applied to the proceedings of courts and the affairs of men. We have not found a case which decided that a sale was bad, because the officer returned that he had levied upon the right, title, and, interests of the defendant in the land; instead of saying that he had levied upon the land itself; and if a case can be found which holds to so great a degree of strictness in reference to officer's returns upon executions, we should be disposed to disregard it, unless supported by stronger reasons, for making such distinctions than any which occur to our minds. Another objection taken to the sale was that it did not appear from the returns of the sheriff, that there were no goods or chattels from which to make the money. We do not deem this an essential part of a sheriff's return, or at all events such an omission as would justify the setting aside the sale when the title has passed into the hands of innocent purchasers. By the writ, the officer was commanded to make the amount of the judgment out of the goods and chattels of the judgment debtor, not exempt from sale; and in default of goods and chattels, to cause the amount to be made of the real estate. Is it not fair to presume in the absence of all evidence to the contrary, that the officer did his duty and complied with the exigencies of the writ?

But a still further objection was taken to the levy and sale; which is, that it was not made in parcels; and this is stated to be one of the principal grounds upon which the deed was ruled out. It is said that at the time of the sale the lands in question were laid off into village lots, and were known as such, and should have been levied upon and sold in lots, instead of being levied upon and sold according to the public surveys. Now whatever weight there might have been, under other circumstances, in this objection, we think it is entitled to none, when it appears that the levy and sale were made in this manner under the express direction of the defendant, Doty. He surely had a right to waive all the benefit of the statute which required that the land should be sold in lots, and to consent and order that the sale should be made as it was. It was a provision of law calculated to protect his interests, and a provision that the sheriff might, and probably would have observed had he not been instructed by Doty to do otherwise.

To permit the sale now to be set aside and declared void for an irregularity of this kind, would be most monstrous injustice. The defendant offered to prove by Bird, the officer who made the levy and sale, that the levy and sale of the lands mentioned in said executions and in the certificate of sale, were made under the directions of Doty, and in compliance with his orders. The testimony in no wise went to contradict or impeach the return made by him as an officer, and was competent evidence. And we suppose it was competent to show by Doty himself the same facts. This was sufficient to obviate all objection to the manner of making the levy and sale. It is to be observed that the effect of this testimony was not to destroy and upset titles, but to uphold and support them. Again, it is insisted that there is no return of the sheriff on the *vendi exponas* from Milwaukee county, of any levy and sale. We do not think that this objection is supported by the record.

But it is said that the testimony of Doty, if admitted, shows that the sale by the sheriff was made for his benefit, and therefore nothing passed to the purchaser at such sale, the same being fraudulent and void as to creditors, or subsequent pur-

chasers.    Fraud is not to be presumed, and if it really existed the testimony of Doty does not clearly show it.    We give no opinion as to whether this sale could be overhauled in equity. But we do not think it can in an action at law.    The conclusion to which we have arrived, is, that the ruling out of the sherriff's deed was error, and for this reason the judgment of the circuit court must be reversed, and a new trial ordered.