## THE STATE OF OREGON, RESPONDENT, *v.* J. H. McDONALD AND WILLIAM BELL, APPELLANTS.

WITNESS—IMPEACHING QUESTION.—In a prosecution upon an indictment for larceny, the prosecuting witness was asked the following question by defendant's counsel: "Between the time you lost your money and the time you went out to Forest Grove, was you not on the streets of the city of Portland with L. Besser, chief of police, looking for the men that got your money, and did you not see McDonald, one of defendants, and did not L. Besser point out McDonald to you, and ask you if he was the man that got your money?" *Held*, that the question did not relate the circumstances of time, place, and persons present, so as to entitle the defendant to impeach the witness.

DISCRETION OF THE COURT.—A motion for a new trial, based upon matters *dehors* the record, is addressed to the sound discretion of the court, and will not be reviewed on appeal.

OBJECTIONS TO A JUROR on the ground of incompetency are waived by failing to challenge at the proper time.

APPEAL from Multnomah County. The facts are stated in the opinion.

*George W. Yocum and Francis Clarno*, for appellants:

Our statute, page 274, sections 830, 831, has provided how a witness may be impeached, and this is nothing more than the common law rule. (1 Greenl. Ev., sec. 462, and note 1, and cases cited in note 1.) This rule is adopted by our statute, as the rule is not uniform in all the states. (2 Graham and Waterman, N. Tr. 665, 613.)

We insist the foundation was fully and fairly laid to impeach Wallace, and if Besser and Daniels had been allowed

8

to testify, the corrupt and false testimony of Wallace would have been overthrown.

In many of the states a witness may be impeached without first inquiring of the witness if he has not made contradictory statements to other persons at other times and places. (*Tucker* v. *Welsh*, 17 Mass. 160, 164; *Titus* v. *Ash*, 4 Foster, N. H., 319; *Hedge* v. *Claggs*, 22 Conn. 622; *Robinson* v. *Hutchinson*, 31 Vt. 443; 9 Cush. 338; 3 Gray, 463; 2 Phillips Ev. 774.)

Here is the authority of four respectable states holding that a foundation to impeach need not be laid, and also the authority of one respectable text-writer, and the reasons given for not apprising a witness of your intention to impeach him, are equally as cogent as those given in favor of the rule. But we are nevertheless bound by the rule prescribed by our statute; yet the spirit of the statute and the object to be attained must be kept steadily in view. The witness must have a fair chance, his attention must be called to the conversation, time, place, and person. This was done.

Was W. L. Higgins a competent juror, or did defendants waive their objections by failing to challenge him? It is conclusively shown by the affidavits of defendants and the affidavit of Higgins, the juror, that he was not born a citizen of the United States. There is no evidence showing that Higgins ever was naturalized. The affidavit of Higgins is not competent to prove the judgment of a court of record, and besides all this, his affidavit is indefinite, and does not state what court he was naturalized in, likely before a justice of the peace. The affidavit of Higgins is a declaration that he is not a citizen of the United States. It might be competent evidence to enable him to vote at an election where the statute of the state expressly makes the oath or affidavit of a person sufficient. (2 Graham & Waterman, N. Tr., 2 ed., 189, note 2; 1 Greenl. Ev. sec. 86.)

Did the defendant waive the objection to the competency of this juror by failing to challenge him? Under section 182 (Code, page 142), subdivision 2, a defendant may challenge a juror for "a want of any of the qualifications pre-

scribed by law." The defendants might have challenged the juror, but the state put them on trial, and was bound to give them a competent panel. (2 Graham and Wat. N. Tr. 187, 277; 6 Johns. 332; *Geykowski* v. *The People*, 1 Scam. 476; *State* v. *Babcock*, 1 Conn. 401; *Borst* v. *Becker*, 6 Johns. 332; *Judgon* v. *Eslava*, Minor (Alabama), 2; Hillard on N. Tr. 87, sec. 6; *Seal* v. *The State*, 13 S. & M., Miss. 398; *Burnshill* v. *Giles*, 9 Bing. 13.)

*J. F. Caples, District Attorney, and M. F. Mulkey*, for the State:

Our code expressly provides that before a witness can be impeached by showing that he has made inconsistent statements, such statements must be related to him with the circumstances of times, places, and persons present. We claim that this was not done, and the foundation required by the statute was not laid. "Before this can be done," the circumstances of times, places, and persons present must be related to the witness as well as the statements. It is not enough to ask the witness the general question whether he has ever made such statements, but his attention must be called to the particular circumstances of time, place, and persons present, so that he may recollect, and if he does recollect, so that he may explain or rebut. This is the common law rule, and the rule of our statute, and is fair and right, due to the witness, and not unjust to the defendants. (Civ. Code, 274, sec. 831; 1 Greenl. on Ev., 10 ed., sec. 462, and note 1; 16 Cal. 177; 33 Id. 522; 44 Id. 457.) They do not attempt to fix the time nor the place. They say between "the time you lost your money and when you went to Forest Grove." This includes the first, second, and third days of January, and calls the attention of the witness to no particular time or circumstance of time. They say on the streets of Portland, but do not call the attention of the witness to any particular street, corner, or block. "When you and Besser were on the streets of the city of Portland looking for the men who got your money," does not call the witness' attention to any circumstance of time or place, for they might have been and

in fact were upon many streets on different days, that is, on the first, second, and third of January, looking for the defendants. It is objected that Higgins, one of the jurors, was not a citizen; this is not true. It appears from the record that he was a citizen; he swears that he is a citizen, and there is no competent evidence to contradict this statement.

But it was for the defendants to ascertain that he was not a citizen, if that were so, by proper examination, and having neglected to do so, the verdict in this case will not be disturbed. If Higgins was an alien they could ascertain that before as well as after trial, otherwise they could allow an alien to sit for the purpose of defeating justice. (Proffatt on Jury Trial, sec. 172; *Chase* v. *People*, 40 Ill. 352.)

By the Court, PRIM, J.:

This is an appeal from a judgment in a criminal case. The appellants were jointly indicted for the crime of larceny for stealing five hundred dollars from S. R. Wallace by means of a fraudulent trick or device called the Kentucky Lottery. They were jointly tried, convicted, and sentenced to the penitentiary for the term of ten years.

The appellants sought to impeach the witness Wallace by showing that he had made at another time statements inconsistent with his testimony on the trial, and to lay the foundation for this, asked him the following question: "Between the time you lost your money and the time you went out to Forest Grove, were you not on the streets of the city of Portland, with L. Besser, Chief of Police, looking for the men that got your money, and did you not see McDonald, one of the defendants, on the street, and did not L. Besser point McDonald out to you and ask you if he was the man that got your money, and did you not then and there say to L. Besser, 'No, he is not the man—he don't look like the man—the man that got my money was of a sandy complexion?' or words to that effect?" And the said Wallace then and there answered said cross-question and said, "No, I never told Besser so, I did not tell Besser that McDonald was not the man that got my money."

And in the further progress of the trial the appellants introduced said L. Besser, chief of police, as a witness, and offered to prove by him that between the first and third days of January said S. R. Wallace was with L. Besser upon the streets of Portland looking for the men that got his money, and that Besser pointed out to Wallace, McDonald, and asked Wallace if McDonald was not one of the men that got his money; and that said Wallace then and there said, " No, he (McDonald) is not the man—he don't look like the man—the man that got my money was of a sandy complexion." And thereupon the district attorney objected to this evidence by defendants because there was no time or place fixed in the impeaching question, and because there was no foundation laid to contradict the witness, Wallace. The court sustained said objections.

This ruling of the court is assigned as error.

The code provides that " a witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statement must be related to him, with the circumstances of times, places, and persons present; and he shall be asked whether he has made such statements, and if so, allowed to explain them." (Code, 274, sec. 831.) This was the common law rule as laid down in Greenleaf and other works on evidence. (1 Greenl. on Ev. 462, note 1.) The question propounded to the witness was indefinite as to the circumstances of time, place, and persons present, and was properly overruled by the court. (16 Cal. 177.)

After conviction, the appellants, by their counsel, filed a motion for a new trial, on the ground that W. L. Higgins, one of the jurors who tried the case, was not a citizen of the United States, and therefore not a competent juror. This motion was based upon the affidavit of McDonald, one of the appellants, to the effect that he had been informed that said Higgins was an alien and had never been naturalized; that said information came to him after the case had been submitted to the jury. The motion was resisted on the affidavit of said Higgins, which is to the effect that he

had been a citizen of Multnomah county in this state for twenty-nine years; that he did not know whether he was born in the United States or not; that at his earliest recollection he was in Newburyport, Mass.; that to prevent any question as to his citizenship, he was naturalized in Boston, Mass., either in 1846 or 1847. He did not recollect which.

The motion for a new trial was overruled, to which ruling of the court the appellants excepted and assign here as error.

This motion, being based upon matters *dehors* the record, was addressed to the sound discretion of the court below and can not be assigned and reviewed on appeal. The code provides that "after hearing the appeal the court must give judgment without regard to the decision of questions which were in the discretion of the court below." (Crim. Code, p. 371, secs. 245-6.) This court has heretofore ruled to this effect in several cases. (*State* v. *Fitzhugh,* 2 Or. 228; *State* v. *Wilson,* 6 Or. 428.)

This is sufficient to dispose of this appeal on this point, but we will further say that, whether Higgins was a competent juror or not, it was too late to make that objection after the trial. It was waived by failing to challenge at the proper time. It was claimed in the argument that this being a criminal case the accused should waive nothing. Upon this proposition they cited *Geyhowski* v. *The People,* 1 Scam. 476. That case was afterwards overruled and held by the same court not to be good law in the case of *Chase* v. *The People,* 40 Ill. 354.

Finding no substantial error in the record, the judgment is affirmed.