# SHEPPARD v. YOCUM AND DeLASHMUTT.

WITNESS MAY EXPLAIN BY DIAGRAM.—Where a diagram not questioned and shown to be correct, was not admitted as evidence, but only to enable a witness to explain the position and location of different points and objects as to which he testifies, such a diagram may be referred to and shown to the jury.

IDEM—CREDIBILITY OF, HOW ASSAILED.—Sec. 831 of the code is but declaratory of the common law rule, and when a witness is to be assailed by proof of something he may have said elsewhere, contradictory of his testimony as given, and the witness has been first inquired of concerning it, and the time when, and place where, and the person involved in the supposed contradiction called to his attention, a foundation has been properly laid within that rule for a contradiction of the witness. The object of the rule is simply for the protection of the witness, to give him an opportunity to recollect the facts, and correct the statements when immediately brought to his mind.

CONFESSIONS—WHEN THEY DO NOT AFFECT CONFEDERATES.—The rule of law is elementary that when the connection of the individuals in the unlawful enterprise is shown to exist, "every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is, therefore, original evidence against each of them," but what one party may have been heard to say at any other time, as to the share which others had in the transaction, cannot be admitted as evidence to affect them, for such confession is evidence only against the person himself who makes the confession and not against others.

Idem.—The impeachment of the credit of a witness by showing that he has made statements at other times contradictory of his testimony given on the trial, does not lay the foundation for sustaining him by proof of his reputation for truth and veracity. (*Glaze* v. *Whitley*, 5 Or., 167, overruled.)

Statute of Limitations in Action of Trover.—The statute of limitations begins to run against an action of trover from the time of the conversion, and the action must be commenced within six years.

Appeal from Polk County. The facts are stated in the opinion.

*James McCain and George W. Yocum*, for appellants.

The circuit court erred in permitting the plaintiff, while testifying as a witness, to point out to the jury, upon a diagram purporting to show the house, office and safe from which the money mentioned in the complaint was alleged to have been stolen. It was not authenticated by any authority and was totally incompetent as original testimony. It was not made by the witness, and could not, therefore, be referred to to refresh his memory. (Civil Code, p. 274, sec. 826; 1 Wharton Ev., secs. 521–522.)

The reason of the rule requiring the attention of a witness whose credit it is intended to attack, is correctly laid down in *Pendleton* v. *The Empire Stone Dressing Co.*, 19 N. Y., 13. Denio, J., speaking for the court, says: "The reason for requiring that a witness whose credit it is intended to attack by the proof of contradictory statements should be first examined respecting them is, according to the unanimous opinion of the judges in the Queen's case, that he may be enabled to give such reason, explanation, or exculpation as the circumstances of the transaction may happen to furnish."

Certainly this opportunity was given the witness whose contradictory statements were sought to be proven. In

support of our position upon this subject, we cite the following authorities: (*Sloan* v. *The N. Y. Cen. R. R. Co.*, 45 N. Y., 125; *Bennett* v. *O'Byrne*, 23 Ind., 604; *Lawler* v. *McPheeters*, 73 Ind., 577: *Pittsburg* v. *Connellsville R. R. Co.*, 39 Md., 354.)

The court erred in admitting the evidence of J. F. Bewley, Wm. Savage and other witnesses for the plaintiff in support of the general reputation for truth and veracity of W. A. Fenton and J. K. DeLashmutt. As this question was before the supreme court of this state under its former organization (*Glaze* v. *Whitley*, 5 Oregon, 164,) and as the decision of the court in that case was adverse to our view of the statute and the law upon that subject, we approach this assignment of error with diffidence. But with due deference to the court making that decision, and the learned judge who delivered the opinion of the court, we respectfully submit that the decision was not founded in reason nor supported by the current of authority. Indeed, such a result cannot be reached without doing violence to the plain language and evident intent and meaning of the statute. Parker, J., in *The People* v. *Gay*, 1 Parker's Criminal Reports, page 316, says: "It would greatly multiply the issues, and needlessly increase the prolixity of trials, and I think also tend to mislead the jury from the more important questions of the case." (See *Russell* v. *Coffin*, 8 Pick., 143; Barb. Crim. Law., 432; *Starks* v. *The People*, 5 Denio, 106; *Pruitt* v. *Cox*, 21 Ind., 15; *The People* v. *Hulse*, 3 Hill, 308; *Rogers* v. *Moore*, 10 Conn., 13; *Brown* v. *Moors*, 6 Gray, 451; *Ray* v. *Donnell*, 4 McLean, 504; *Atwood* v. *Allen*, 1 Allen, 483; *Vance* v. *Vance*, 2 Met., [Ky.], 581.)

A man's confessions are only evidence against himself, and not against his accomplice, although made in the hearing of the accomplice who did not deny them. (Barb. Crim.

Law, page 463; 2 Stark R., 33; *Commonwealth* v. *Mc-Dermott*, 123 Mass., 440, [25 Am. R., 120]; *Commonwealth* v. *Kinney*, 12 Met., 235; *Commonwealth* v. *Walker*, 13 Allen, 570.)

*Williams, Hill, Durham & Thompson*, for respondent.

Secondary evidence may be received of buildings, monuments and other objects which cannot be brought into court. For this purpose, authenticated plans or diagrams of the *locus in quo* are admissible, and may go to the jury. (2 Wharton's Law of Evidence, sec. 677.) The plan was not evidence and it does not appear that it was admitted as such. As a means of enabling a witness to explain the position of different points, locations, walks and fences, as to which he testifies, such a sketch may be referred to and shown to the jury. It appears to have been used merely as such. (*Clapp* v. *Norton*, 106 Mass., 33; *Commonwealth* v. *Holliston*, 107 Mass., 232.)

On a direct examination, leading questions are not allowed, unless merely formal or preliminary, except in the sound discretion of the court under special circumstances, making it appear that the interests of justice require it. (General Laws of Oregon, sec. 827.)

The diagram in question was not in the nature of a leading question. It was first shown without objection and without question, to be correct. It then stood for the purposes of being used at the trial, on the same footing as official maps, upon which streets, houses and other places and things are designated and marked. Official maps, when material, may always be used at the trial without further proof, because from their official character they are presumed to be correct. Unofficial maps and diagrams have not this presumption of correctness; but when they are once proven,

and their correctness is unquestioned, as in this case, then they may be used for any purpose if material. (*Vilas* v. *Reynolds*, 6 Wis., 214.)

There are circumstances under which a party may impeach his own witness, but he can do so only in the manner provided by the statute, "He may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony." (Gen. Laws, sec. 828.) He cannot, under any circumstances, impeach his own witness excepting in one of the two ways above provided. A party can never impeach a witness, when the sole purpose of calling him is to impeach him. It is only when the testimony of the witness upon some material point is different from that which the party has reason to believe it ought to be, that the witness can be impeached by the person producing him; and then only as to such material point. (1 Greenleaf on Evidence, sec. 449.) The practice in this state, in matters of impeachment of witnesses, and rebutting impeaching testimony, is very well regulated by statute, and settled by decisions of the supreme court. (General Laws, secs. 830 and 832; *Glaze* v. *Whitley*, 5 Oregon, 164; see also, 1 Greenleaf Ev., sec, 469.)

An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof, shall be commenced "within six years" after the cause of action shall have accrued. (General Laws of Oregon, sec. 6.)

By the Court, LORD, J.:

This was an action of trover to recover damages for the wrongful taking, carrying away and conversion of the sum of $7,200, on the 6th day of November, 1877. The answer of the defendants denies each and every material allegation of the complaint, and as a further defense pleads the statute

of limitations, alleging that more than two years had elapsed since the alleged taking, carrying away and conversion of the money named in the complaint, before the commencement of the action. The plaintiff replied, and the cause being at issue, a jury was empaneled to try the same; a verdict was found for the plaintiff, and judgment rendered thereon. At the trial, numerous exceptions were taken to rulings of the court on the admissibility of testimony, and to the instructions of the court to the jury, and the appeal from the judgment is brought before us upon the error alleged in the bill of exceptions.

The first exception presents the question, whether a diagram or map, after being shown by the evidence to be correct, can be used by a witness to explain the location of places designated on the map or diagram. It appears by the bill of exceptions that the court permitted the witness to refer to the map or diagram, and to point out thereon the objects and things thereon noted and named, giving their relative positions to, and distances from each other, and from the map or diagram to explain to the jury the exact location of the safe where the money was stolen, and the relative position thereto of the other objects, but the map or diagram was not offered in evidence, and did not go to the jury except for the purposes as above stated. In *Clapp* v. *Norton*, 106 Mass., 33, the court say: "The plan was not evidence and it does not appear that it was admitted as such. As a means of enabling a witness to explain the position of different points, locations, walks and fences, as to which he testifies, such a sketch may be referred to and shown to the jury. It appears to have been used merely as such." (*Commonwealth* v. *Holliston*, 107 Mass., 232; *Paine* v. *Woods*, 108 Mass., 168.)

It is claimed that the diagram was in the nature of a

leading question, but to this it is replied, that it was first shown to be a correct representation of the several things represented upon it, and therefore, could not have prejudiced the defendants by its use, and second, in the exercise of a sound discretion, the court had the right to permit its use, even though it should be found to be a leading question. Our code provides that "on direct examination, leading questions are not allowed unless merely formal or preliminary, except in the sound discretion of the court, under special circumstances, making it appear that the interests of justice require it." (Code, sec. 837.) But we are unable to concur in the view that the map or diagram was in the nature of a leading question as claimed and argued by counsel for the defendants. The map was first shown without objection and without question to be correct. When this was done, for the purposes of the trial, it stood on a similar footing as official maps. The presumption of the law in favor of the correctness of official maps originates in their official character, and although the same presumption does not exist in favor of unofficial maps or diagrams when their correctness is proven and unquestioned as in this case, they are admissible. (*Vilas* v. *Reynolds*, 6 Wis., 214.) We are, therefore, of the opinion there was no error in the ruling of the court in permitting the witness to use the map or diagram for the purpose as stated.

The next exception is that the court erred in sustaining the objection of counsel for the plaintiff to the testimony of James A. Yocum, a witness called by the defendants, to impeach the evidence of J. K. DeLashmutt, who had testified as a witness for the plaintiff for the purpose of showing that he (DeLashmutt) had made declarations out of court inconsistent with his evidence at the trial. The question propounded to the witness Yocum was as follows: "Did

you on the 1st day of November, 1881, at the residence of Filmore DeLashmutt, have a conversation with J. K. De-Lashmutt in which he said to you, 'we want you to swear that Hathaway Yocum told you that he got away with the Jews and their money, and if you will do so you will not lose anything, and I will make by it?'" The plaintiff's objection was, that the proper foundation had not been laid, by calling the attention of the witness DeLashmutt to the time, place, and circumstances of the conversation, and *"persons present."* On cross-examination, this witness had been asked by counsel for the defendants this identical question, and as there was no objection, he answered, "I did not. I went there to Filmore's to ask James A. Yocum if he had said that Hathaway Yocum got away with the Jews and their money, and did not ask him to swear that Hathaway Yocum said he got away with the Jews or their money, or that he would not lose anything, or that I would make by it." This answer shows clearly that the witness, De-Lashmutt, had his attention called to the conversation sought to be proven, sufficiently for him to recognize the particular conversation referred to; for he admits having a conversation with James A. Yocum upon that day, at that place, upon that subject. But the particular objection made at the argument was that the "persons present" were not stated in the question, as required by sec. 831 of the code, p. 274, and as decided by this court in *State of Oregon* v. *McDonald*, 8 Or., 117. An examination, however, of that case will show that the objection was based on the ground that there was *no time* or *place* fixed in the impeaching question, and the particular question here involved was not presented, or intended to be decided by the court. In delivering the opinion of the court in that case, Judge Prim said: "The code provides that 'a witness may be impeached by evidence

that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statement must be related to him, with the circumstances of time, places, and persons present; and he shall be asked whether he has made such statements, and if so, allowed to explain them.' (Sec. 831.) This was the common law rule as laid down in Greenleaf and other works on evidence." (1 Greenleaf on Ev., 462, note 1.) Now it is here decided that this section of our code is but declaratory of the common law rule; and in California the same rule is applied and declared in respect to a provision of their code, identical in every particular with our own. (Code of Civil Procedure, sec. 2052; *People* v. *Devine*, 44 Cal., 457.)

To ascertain, then, the soundness of the objection under consideration, it becomes necessary to examine what the common law rule is, its purposes, and limitations. The general rule which governs in the production of verbal testimony to impeach the credit of a witness who has made statements, at other times, inconsistent with his present testimony, is deduced by the text writers and the courts from the opinion of the judges in the Queen's case, 2 Brod. & Bing., 313–314, and *Angus* v. *Smith*, 1 Mood. & Malk., 474, in which last case Tindal, C. J., says: "I understand the rule to be that before you can contradict a witness, by showing that he has at some other time said something inconsistent with his present evidence, you must ask him as to the time, place and *person involved* in the supposed contradiction." And subsequently in *Crowley* v. *Page*, 7 Carrington & Payne, 790, Parke, B., said: "Evidence of statements by witnesses on other occasions relevant to the matter at issue and inconsistent with the testimony given by them at the trial, is always admissible in order to impeach the value of that testimony; but it is only such statements

as are relevant that are admissible, and in order to lay the foundation for the admission of such contradictory statements, and to enable the witness to explain them, and, as I conceive, for that purpose only, the witness may be asked whether he ever said what is suggested to him, *with the name of the person to whom, or in whose presence he is supposed to have said it,* or some other circumstances sufficient to designate the particular occasion." As a sound and correct exposition of the common law rule governing in the production of evidence in such cases, these authorities have been approved and cited by Phillips, Greenleaf and Wharton in their text books on evidence, (2 Phillips on Ev., 959, 960; 1 Greenleaf on Ev., sec. 462 and note; 1 Wharton's Law of Ev., secs. 551–555, and notes,) and a few illustrations and references to the decisions of the highest judicial tribunals of this country, will serve to show that the rule, as thus announced, has been approved and applied, and generally prevails in nearly all the states of the union.

In *People* v. *Devine*, 44 Cal., 457, the court say: "It is a settled rule prevailing in this court, in the English courts, and in those of nearly all the states of the union, that where the credibility of a witness is to be assailed by proof of something he may have said elsewhere, contradictory of his testimony as given, the witness must first be inquired of concerning it, and the time, place, and person involved in the supposed contradiction must be called to his attention. When this has been done, a foundation for a contradiction of the witness is said, in legal parlence, to have been laid, for these inquiries are necessary in order to found a contradiction, and of course, when there has been an omission to do this, it may be objected that *a proper foundation has not been laid.*" In *Spauntrorst* v. *Lent*, 46 Mo., 199, the court say: "All that is necessary to contradict a witness,

by showing that he has, at some other time, said something inconsistent with his present evidence, is to ask him as to the time, place, and person involved in the supposed contradiction." And in *Cole* v. *State*, 6 Baxter, (Tenn.,) the court say: "Where it is intended to impeach the witness by proving that he made statements out of court contrary to what he has testified in court, the witness should be asked whether he said or declared that which it is proposed to prove ·by the impeaching witness, that he did say, or declare, and the time and place and person to whom the declaration was made should also be stated in the question." (See also *Hill* v. *Gust*, 55 Ind., 51; *Pendleton* v. *The Empire Dressing Stone Co.*, 19 N. Y., 13; *Sloan* v. *N. Y. Cen. R. R. Co.*, 45 *id.*, 127; *Nelson* v. *C. R. & R. Co.*, 38 Iowa, 565; *Pittsburg* v. *Connellsville R. R. Co.*, 39 Md., 354; 1 Wharton's Law of Ev., sec. 555, authorities cited in note.)

Now the question propounded, and to which objection was made and sustained by the court was definite as to the time when and place where, and the person to whom the declaration was made, and came clearly within the rule as laid down by the authorities. The object of the rule is simply for the protection of the witness, to give him an opportunity to recollect the facts, and correct the statements when immediately brought to his mind, and such only can be the object of the statute (sec. 831) which is but declaratory of that rule. The answer of DeLashmutt on cross-examination showed clearly that he understood the particular conversation referred to, and the witness introduced to contradict and to confront him, was *the* witness to whom the declarations were made, and when the question asked specified time and place and the person involved in the supposed contradiction, it was within the rule. As the objection

taken and argument made was confined to this point, it is the only aspect in which we have deemed it necessary to consider it, although proof of this matter was admissible on another ground. (1 Greenleaf on Ev., sec. 462; 2 Phil. on Ev., 435; *Baker* v. *Joseph*, 16 Cal., 178.) It is our judgment that the court erred in sustaining the objection.

In the progress of the trial, two witnesses were called by the plaintiff, and testified to certain matters material to the issue, and a proper foundation having been laid therefor, the defendants called witnesses who testified that the said witnesses of plaintiff had at other times and places made statements inconsistent with their present testimony. The plaintiff, in rebuttal, was allowed by the court to introduce evidence to prove that the general reputation of his said witnesses for truth and veracity was good. To the introduction of this evidence the defendants objected that it was incompetent and immaterial, and this constitutes the next alleged ground of error. The identical question involved in this exception was decided by this court in *Glaze* v. *Whitley*, 5 Or., 166; but we have been earnestly pressed, in an able argument, to reconsider the ground upon which that decision rests. Mr. Greenleaf, in his work on evidence, favors the admission of such evidence. (1 Greenl. on Ev., sec. 469, and is cited in *Glaze* v. *Whitley*, *supra*.) In our examination of this question, we find the rule to admit such evidence is sustained in *Harris* v. *The State*, 30 Ind., 131; *Stratton* v. *The State*, 55 *id.*, 468; *Burrill* v. *The State*, 18 Texas, 713; *Isler* v. *Dewey*, 71 N. C., 14; *Paine* v. *Tilden*, 20 Ohio, 554; but that the contrary rule is held in *Russell* v. *Coffin*, 8 Pick., 143; *Brown* v. *Morrs*, 6 Gray, 451; *Frost* v. *McCargar*, 29 Barb., 617; *The People* v. *Hulse*, 3 Hill, 309; *The People* v. *Gray*, 3 Selden, 378; *Weitz* v. *May*, 21 Penn. St., 274; *Webb* v. *State*, 29 Ohio

St., 357; *Stamper* v. *Griffin*, 12 Ga., 450; *Vance* v. *Vance*, 2 Metc., [Ky.] 581; *Chapman* v. *Cooley*, 12 Rich., [S. C.,] 654; *Ray* v. *Hamilton*, 4 McLean, 512.) These authorities are sufficient to show that some contrariety of decision prevails upon the admission of such evidence, and that the rule laid down in *Glaze* v. *Whitley*, *supra*, ought not to be disturbed without due consideration. But we are convinced, after a careful examination of the reasons, *pro* and *con*, the better rule is to exclude such evidence—that it facilitates trials by avoiding a multiplicity of collateral issues, and the confusion ordinarily incident thereto—that it tends to secure the proper determination of the legal rights of parties by confining the evidence and the attention of the triers to the real issues sought to be litigated, and it is sustained by the weight of judicial authority. Besides, the reasons upon which the opposite rule is founded which allows the impeached witness to be sustained by such evidence, applies with equal force to the impeaching witness, and, carried to its logical results, would and ought to include similar evidence to sustain him. In our judgment, it is a better practice to confine the trial to the issues of the action, and exclude such collateral matter, and thereby avoid the delay and tendency to mislead the jury from the more important questions of the case. It is proper, however, to say that this assignment of error would not have prevailed, if the record had not disclosed other matter which must reverse the case.

The next objection is to an instruction of the court, and an instruction refused as asked, but modified, which will be considered together. The court instructed the jury and said: "There has been some evidence introduced in this case tending to show that the defendant, Lindsey DeLashmutt, made some statements, or declarations concerning the taking of the money in controversy, both before and after

the alleged taking, which implicated, or tended to implicate, defendant Yocum in the act. Any admissions made by DeLashmutt concerning the taking of the money are to be considered by you as evidence against him, but not against defendant, Yocum, unless you should believe from the evidence that the plan or design to take the money, if at all, was matured and formed by DeLashmutt and Yocum before the making of such statements, if made at all." Just here it will be noted that the court was instructing the jury in reference to the declarations of Lindsey DeLashmutt, made before and after the alleged taking of the money which tended to implicate his co-defendant Yocum, and while the court properly instructs that any admissions of DeLashmutt are evidence against him, but not against defendant Yocum, he proceeds to state the conditions, or limitations under which such declarations are admissible as evidence against Yocum, to the effect, that if the jury believe there was a plan or priority of design to take the money, formed and matured by the defendants, then the declarations of Lindsey DeLashmutt, concerning the taking of the money in controversy, both before and after the alleged taking, are admissible as evidence against the defendant, Yocum. Or in other words, if the jury find from the evidence that the declarations of Lindsey DeLashmutt, which tended to implicate defendant Yocum, were made after a joint plan or design was formed and matured between the defendants, then the declarations of Lindsey DeLashmutt were admissible as evidence against Yocum, either before or after the alleged taking of the money, and were entitled to be considered by the jury in their deliberations. Whatever doubts might exist as to this being the proper construction, and effect of the instruction, they disappear by a consideration of the instruction refused as asked, but modified by the court, and the

evidence disclosed by the bill of exceptions to which the instructions upon this point refer. To avoid any misconstruction, and to obviate what counsel for the defense conceived to be the error of this instruction, they asked the court to give the jury the following instruction: "If you find from the evidence that the statements and declarations of defendant DeLashmutt made *after* the alleged conversion of the money, were made at times when defendant Yocum was not present, and did not assent to such declarations or statements, then, in that case, you will not consider such declarations or statements as having any tendency to prove anything against defendant Yocum." The court refused this instruction, but modified it by adding the following words: "Unless you believe that Yocum was a party to the conversion, and it was a joint act of the defendants in pursuance of a joint plan." This was in effect saying to the jury that the instruction he asked is true, unless you believe that Yocum was a party to the conversion, and the conversion was a joint act of the defendants, in pursuance of a joint plan, then it is not true, then the declarations of defendant DeLashmutt made after the conversion of the money, and at times when the defendant Yocum was not present, and did not assent to such declarations, are admissible as evidence against him, and are properly before you for consideration. This virtually reiterates the error complained of in the former instruction, and certainly tends to confirm the construction given to it. The rule of law is elementary that when the connection of the individuals in the unlawful enterprise is shown to exist, "every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them." (1

Greenl. on Ev., sec. 111; 2 Wharton's Law of Ev., sec. 1192; 1 Phillips on Ev., p. 205; *United States* v. *McKee*, 3 Dillon, 560.) But "here also," says Mr. Greenleaf, "care must be taken that the acts and declarations thus admitted, be those only which were made and done during the pendency of the criminal enterprise and in furtherance of its objects. If they took place at a subsequent period, and are, therefore, merely narrative of past occurences, they are as we have just seen, to be rejected."

In *Metcalfe* v. *Conner*, Littell's Select Cases, 497, (12 Am. Dec., 34,) Boyle, C. J., says: "Any declarations by one of the parties at the time of committing the unlawful act, are, no doubt, not only evidence against himself, but as being part of the *res gesta,* and tending to determine the quality of the act, are also evidence against the rest of the party, who are equally as responsible as if they themselves had done the act. *But what one party may have been heard to say at any other time, as to the share which others had in the transaction,* or as to the object of the conspiracy, cannot be admitted as evidence to affect them, for it has been solemnly decided that a confession is evidence only against the person himself who makes the confession and not against others." (Phillips on Ev., 73–4; *Lincoln* v. *Clafflin,* 7 Wall., 139; *Lynes* v. *The State,* 36 Miss., 625; *State* v. *Pike,* 51 N. H., 105; *Benns* v. *The State,* 57 Md., 46; *Berford* v. *Sanner,* 40 Penn. St., 1; *The People* v. *English,* 52 Cal., 212.)

When it is considered that the bill of exceptions discloses that Wm. Ridgeway and J. K. DeLashmutt, both witnesses for the plaintiff, had testified in substance that after the safe robbery, and after the time when it is claimed that the money was stolen, that the defendant, Lindsey DeLashmutt, had stated to them "he had taken their money and the de-

fendant, Hathaway Yocum, had assisted him," the importance as well as the right of defendant Yocum to have the jury properly instructed as to the rule of law upon the questions presented by the instructions becomes apparent.

The next objection is that the court erred in refusing to instruct the jury that the action was barred by the statute of limitation. This objection is founded upon subdivision 1, sec. 8, of the code, but it is not tenable. Actions of trespass, trover, deterim and replevin belong to the same class and are governed by strictly analogous principles, although the form of proceeding and the results are not the same. (See Wells on Replevin, sec. 44, and notes 1 and 2.) The statute of limitations begins to run against an action of trover from the time of the conversion, (*Kelsey* v. *Griswold*, 9 Barb., 441,) and the action must be commenced within six years. (Code, sub. 4, sec. 6, p. 107; Wait's Practice, vol. — p. 57; *Kelsey* v. *Griswold*, 6 Barb., 436.) These constitute all the objections we deem it necessary to notice, presented by the bill of exceptions. The judgment is reversed and a new trial ordered.

Judgment reversed.