### FROST and others *vs.* McCARGAR.

The settled rule in this state now is, that where the veracity of a witness is attacked and he is sought to be impeached, only by proof of contradictory statements made by him on other occasions, in respect to the same matter, or by proof of particular facts, stated by such witness, against himself, on his examination, evidence of general good character, or of good character for truth and veracity, in support of the witness, is inadmissible.

Where a complaint alleges that the defendant, while acting as the agent of the plaintiffs, has, with intent to embezzle the plaintiffs' property, fraudulently secreted, made way with, and converted the same to his own use, and in another count it alleges that the defendant, being in possession of the plaintiffs' property as their agent, has converted the same to his own use, it is proper to charge the jury that if they should find that the defendant, under the false pretense of having been robbed, has converted such property to his own use, they may find a verdict for the plaintiff, under either count.

APPEAL from a judgment entered at a special term, on the verdict of a jury. The plaintiffs, in the first count of their complaint, alleged that on the first day of October, 1856, they were copartners in business at the city of Rochester, under the firm name of "A. Frost & Co." That on the 13th day of that month the plaintiffs duly appointed the defendant their agent and servant to deliver certain personal property then owned by the plaintiffs, consisting of trees, shrubbery and nursery property, to purchasers or contractors therefor in the state of Wisconsin, and to receive the money to be paid therefor, which appointment was accepted by him. That in pursuance of such appointment, the plaintiffs placed in the hands and possession of the defendant, as their agent, a large amount of nursery property, to be delivered as aforesaid, to wit, of the value of $2600 and upwards; that the defendant proceeded to the state of Wisconsin with the said property, and that he made delivery thereof to contractors and purchasers, and received therefor the sum of $2648.43, over and above expenses. That the defendant, being so possessed of the said money belonging to the plaintiffs, and being their agent and servant as aforesaid, with intent to embezzle the same, did fraudulently and feloniously secrete and make way with

and convert to his use the money aforesaid, to the amount of $2648.43, and wholly neglected and refused, and still does neglect and refuse, to produce and pay over to the plaintiffs the money aforesaid, or any part thereof. In a second count, the plaintiffs alleged that on the 17th day of November, 1856, the defendant was possessed of $2648.43, the property of the plaintiffs, of which the defendant was in possession as their agent and servant; and that the defendant converted the said money to his own use. Wherefore the plaintiffs demanded judgment against the defendant for the said sum of $2648.43, with interest from the 17th day of November, 1856, beside costs.

The defendant put in an answer, denying most of the allegations in the complaint; but admitting that he had delivered a part of the trees and shrubbery purchased by him of the plaintiffs, and collected a sum more than the amount claimed by the plaintiffs; and alleging that the whole of said moneys were stolen from his possession by some person or persons unknown, and without his knowledge, privity or procurement, and without any fault or neglect on his part.

On the trial the plaintiffs proved the appointment of the defendant as their agent, and the delivery to him of trees and shrubbery to the amount sued for, for the purpose of enabling him to fill the orders which he had received, as their agent; and that the defendant had sold and disposed of such trees and shrubbery and received the pay therefor. That he had failed to remit any of the proceeds to the plaintiffs, and when called on to do so, he had stated to the plaintiffs that he had been robbed of the sum of $5800 which he had collected upon the sale of such trees, &c.

Much circumstantial evidence was offered by the plaintiffs, and given to the jury, having a tendency to show that the defendant had not been robbed, as he claimed and alleged, and that the story and account given by him of the alleged loss of money was wholly untrue; and that the said money had not been lost, but was in the possession of the defendant, and had been

Frost *v.* McCargar.

concealed and expended by him for his own use. The plain-tiffs having rested their case, the defendant moved for a non-suit, on the ground that he was not acting as an agent, in a fiduciary capacity, for the plaintiffs, under the agreement given in evidence. The court denied the motion, and the defendant excepted. The defendant also gave evidence tending to show that on the 17th day of November, 1856, he had been robbed of the said $5800 at Madison, by some person unknown, without fault on his part, and that the account that he gave of the loss of said money was true. The defendant was called as a witness on his own behalf, and gave evidence material to the issue. On his cross-examination by the counsel for the plain-tiffs, he gave evidence without objection, having a tendency to prove that while the defendant lived in California, a few years before, he had been engaged in gambling and betting on horse races; that he had been engaged in fights, and had lost a finger in a fight; and that while he was in Kansas, during the year or two before the trial, and after the 17th November, 1856, he had been engaged in defrauding the United States government by means of false and fraudulent proceedings, in taking up pre-emption claims by means of erections on them, 10 inches by 12 inches, instead of 10 feet by 12 feet, as the law required; that he had connived at such frauds, and had made money by their means. The defendant then called a witness, and offered to prove that the defendant's general moral character, and character for truth and veracity, were good, and rested his claim on two grounds; 1st. That in an action of this kind the defendant might prove his good moral character as part of his case; and 2d. That the defendant's general good moral character had been impeached by the plaintiffs on his cross-examination. The counsel for the plaintiffs objected to the evidence, and the court sustained the objection and reject-ed the evidence; and the defendant's counsel excepted. The counsel for the defendant requested the judge to charge the jury, that the defendant was not acting as an agent for the plaintiffs in a fiduciary capacity. The court declined so to

charge, and the counsel for the defendant excepted. Thé court charged, that under the contract in evidence, and the proofs in the case, the defendant was acting as an agent for the plaintiffs in a fiduciary capacity; to which ruling and charge the defendant excepted. The court also charged that the plaintiffs might recover under either count or cause of action in the complaint, if they, the jury, found that the défendant, under pretense to the plaintiffs of having been robbed, unlawfully converted the money of the plaintiffs to his own use; to which ruling and charge the defendant excepted. The court further charged the jury, that to sustain the action the plaintiffs need not show, nor need the jury find, that the defendant embezzled the money of the plaintiffs, but it was only necessary for the jury to find that under pretense to the plaintiffs of having been robbed, he had converted the money of the plaintiffs to his own use; and that if the jury should find that the defendant, under such pretense, wrongfully converted the money of the plaintiffs to his own use, they might find for the plaintiffs under either count of the complaint; to which ruling and charge the defendant excepted. The jury found a verdict for the plaintiffs for $3066.69, being the principal sum of $2648.43 and interest thereon.

*John N. Pomeroy,* for the appellant.

*Benedict & Martindale,* for the respondents.

*By the Court,* JOHNSON, J.   We think the settled rule in this state now is, that where the veracity of a witness is attacked, and he is sought to be impeached only by proof of contradictory statements made by him on other occasions, in respect to the same matter, or by proof of particular facts stated by such witness against himself on his examination, evidence of general good character, or of good character for truth and veracity in support of the witness, is incompetent. (*The People* v. *Hulse,* 3 *Hill,* 309. *Starks* v. *The People,*

Frost *v.* McCargar.

5 *Denio*, 106. *The People* v. *Gay*, 1 *Parker's Cr. Rep.* 310. *Same case affirmed*, 3 *Selden* 378. *Smith* v. *Stickney*, 17 *Barb.* 489.)

It was said, in the court of appeals, in the case of *The People* v. *Gay*, by Jewett, J., and also by Parker, J., in the supreme court, that the decision in the case of *The People* v. *Rector*, (19 *Wend.* 569,) and also that in *Carter* v. *The People*, (2 *Hill*, 317,) had been in effect overruled by the decision in *The People* v. *Hulse.*

It is clear enough, we think, that the latter decision is entirely irreconcilable upon principle with the former, and must be held to have changed the rule. And besides, how does proof of good character tend to reconcile the contradictory statements of the witness, or to relieve him from the damaging effect of the facts stated by him in regard to himself. The fact that the public had never before found out the true character of the witness, could legitimately afford no support to his credibility under such circumstances. The rule, as now established, rests upon sound reason, as well as authority.

The court was also right in charging the jury that if they should find that the defendant, under the false pretense of having been robbed, had converted the plaintiffs' money to his own use, they might find a verdict in the plaintiffs' favor, under either count in the complaint.

The judgment should therefore be affirmed.

[Monroe General Term, September 5, 1859. *T. R. Strong, Smith* and *Johnson,* Justices.