DERRICK v. WALLACE.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1914.)

WITNESSES (§ 344*)—IMPEACHMENT—CORROBORATION.

A character witness cannot be sworn when the only attack on the witness sought to be sustained is by proof of specific acts of misconduct.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1120, 1125; Dec. Dig. § 344.*]

Kruse, P. J., and Lambert, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Frank N. Derrick against Samuel W. Wallace. From a judgment for defendant and an order denying his motion for new trial, plaintiff appeals. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

David N. Salisbury, of Rochester, for appellant.
P. Chamberlain, of Rochester, for respondent.

MERRELL, J. I think the judgment appealed from should be affirmed. The sole ground upon which a reversal is asked is the refusal of the trial court to receive the testimony of witnesses offered by plaintiff to sustain his general character and reputation.

Upon his cross-examination, plaintiff had admitted that some years prior to the trial he had been convicted of the crime of forgery and had served a term in Auburn State Prison therefor. Plaintiff contends that such proof presented the issue of his general reputation, and that to meet such issue he should have been permitted to introduce the testimony of witnesses to show that his general reputation at the time of the trial was good. I do not think that such testimony was competent. The fact admitted by plaintiff upon his cross-examination of a prior specific act of misconduct went to the weight of his testimony. By section 832 of the Code of Civil Procedure, notwithstanding his prior conviction, he was a competent witness upon the trial. The defendant, being advised of the fact that some years prior to the trial plaintiff had been convicted, was permitted under said section "for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination to prove that fact." Defendant might have produced the record of plaintiff's conviction, and, if incorrect, the plaintiff might have met the issue and disproven the same. But defendant adopted the second method provided by section 832, and inquired upon cross-examination of the plaintiff as to whether he had been convicted and had served his term in state prison. When plaintiff admitted such conviction and imprisonment, the fact was established in the case, merely to affect the weight of his testimony. The issue of his general reputation was in no wise tendered by such proof. A party is not permitted to give evidence of his witness' good character until it has been attacked on the other side. People v. Gay, 7 N. Y. 378; Frost v. McCargar, 29 Barb. 617, 620; People v. Hulse, 3 Hill, 309.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

As was said by Judge Bronson in People v. Hulse:

"The general rule is that a party can only give evidence of the good character of his witness where impeaching witnesses have been first called on the other side. By impeaching witnesses I mean such as have spoken to general character, or character for truth, and not such as have merely given a different account of the facts, or proved that the witness has made declarations out of court inconsistent with his testimony on the trial. The question of character must be made by the opposite party, and not by the one who calls the witness."

Judge Hilton, in Varona v. Socarras, 8 Abb. Prac. 302, thus defines the method by which a witness' credibility may be attacked:

"That a witness cannot, upon his cross-examination, or otherwise, be impeached in respect to his credibility, by proof of any single act of bad conduct, or any specific transaction which was criminally or morally wrong. * * * The rule, briefly stated, seems to be that the credit of a witness may be impeached: (1) By showing, on cross-examination, such contradictions or improbabilities in his evidence as to render him unworthy of belief; (2) disproving the facts as stated by him, by other witnesses; (3) by general evidence affecting his character and credit for veracity; and (4) by proof of his having made statements out of court contrary to the evidence given by him at the trial."

The evidence adduced upon plaintiff's cross-examination does not come within either of said classes, and it seems to me did not tender the issue of plaintiff's general reputation.

Greenleaf on Evidence, § 469a, thus enunciates the rule:

"Since a witness' character for veracity is assumed to be good, there is on principle no reason for proving his good character in his support until it has been affected by some of the opponent's discrediting evidence. The question, then, is: When is a witness' character disparaged by the opponent's evidence? (1) A direct attack upon his general character (by reputation or personal opinion), of course, presents such a situation. (2) Where, by evidence of particular misdeeds, brought out on cross-examination, or by proof of conviction for crime, the character is impeached, it is natural to suppose that good character should be received in rebuttal, but, after all, the evidence of good character explains nothing; if the misdeed is admitted on cross-examination or proved by record, it remains as a fact, and a good reputation cannot take away this fact nor the inference from it."

The issue of general reputation was not tendered by the proof adduced on cross-examination of plaintiff of the prior conviction for forgery, and the admission of such conviction merely established a fact which the jury might consider when it came to weigh the credibility of his evidence. The only issue tendered by the proof was as to whether he had committed the crime of forgery and been imprisoned therefor. When he admitted it, the fact became established. He was at liberty to furnish such explanation with reference thereto as the facts warranted, and, indeed, he did testify regarding a pardon which he claims he would have received, except for the death of a relative who was to present his case to the Governor. Evidence of his good character at the time of the trial in no manner affected the fact which he had admitted of his early misconduct.

I think I am fully sustained in the position which I now take with reference to the competency of sustaining witnesses by Wigmore on

Evidence, §§ 1105, 1106, where that learned authority, in discussing the question before us, says:

"Sec. 1105. A direct impeachment of moral character by opposing testimony (reputation or personal opinion) plainly satisfies the rule and opens the way for the opposite party to rehabilitate his witness by testimony to his good character. No one has ever doubted this. But the character of a witness may also be expressly impeached, not merely by his reputation or by others' personal opinion of his character, but by particular acts of misconduct indicating a bad character. This may be done in two ways: (a) By extrinsic testimony of conviction of crime; (b) by answers on cross-examination of the witness himself as to instances of moral misconduct. These two modes are therefore also to be considered.

"Sec. 1106. At first sight there would seem to be here also no doubt about the propriety of rebutting by evidence of good character. The facts offered reflect directly upon the witness' moral character, and an issue upon that character seems clearly to be opened. Such is the natural answer to this question. Yet on strict principle, this result is fallacious. The whole solution turns on the logical distinction between explaining away and merely denying. Consider, first, questions on cross-examination. The misconduct, by hypothesis, being relevant and being proved by the witness' own admission on the stand, demonstrates the bad disposition behind it. If there had been any explanation of the act, the witness could give it. But testimony to general good reputation explains away nothing; the damaging conduct is proved out of his own mouth. Testimony to his good reputation could only avail on the hypothesis that an attacking witness to bad reputation was speaking falsely and that the reputation was really good; but here it is by proved conduct and direct inference bad. Furthermore, records of convictions of crime similarly exhibit the bad character directly, and cannot be explained away by testimony as to good repute. Such is the rule that best accords with the correct analysis of the situation."

The foregoing, I believe, indicates that in this state the weight of authority is opposed to permitting character witnesses to be sworn when the only attack upon the witness sought to be sustained is by proof of specific acts of misconduct on his part.

I therefore am of the opinion that the trial judge was correct in declining to permit the plaintiff to offer testimony of his general good character, and that the judgment appealed·from should be affirmed, with costs. All concur, FOOTE, J., in result only; except KRUSE, P. J., and LAMBERT, J., who dissent in an opinion by LAMBERT, J.

LAMBERT, J. (dissenting). This appeal presents but a single question. Upon the trial, plaintiff was sworn as a witness, in his own behalf, as to matters vital to his recovery. Upon cross-examination, he was asked as to, and he admitted, that he had previously been convicted of the crime of forgery and upon such conviction had served a sentence in state's prison. Thereupon, deeming the issue of his reputation in general to be presented, plaintiff endeavored to sustain such reputation by direct proof from so-called character witnesses. Upon objection from defendant, as to the competency of such evidence, same was excluded and proper exception taken. The ruling, thus presented, is urged as requiring a reversal of the judgment and order appealed from.

Without examining in detail the evidence given by plaintiff, the weight of which is sought to be assailed by the proof of the prior conviction, it suffices to say that it was of such a character and of suffi-

cient importance, so that, if the sustaining evidence was proper, the error in its exclusion is fatal, and requires a reversal.

The propriety of assailing an opposing witness, with proof of his prior conviction of crime, was recognized at common law and has for many years been incorporated in our statutes. By section 832 of the Code of Civil Procedure, it is provided:

"A person, who has been convicted of a crime or misdemeanor is notwithstanding a competent witness in a civil or criminal action or special proceeding; but the conviction may be proved, for the purpose of affecting the weight of his testimony, either by the record, or by his cross-examination, upon which he must answer any question, relevant to that inquiry; and the party cross-examining him is not concluded, by his answer to such a question."

The propriety of the proof of the conviction, the manner in which it was elicited, and the purpose of its admission are all therefore clearly enunciated and permitted by this section.

It cannot be gainsaid that this proof was purely impeaching evidence. Such is the statutory declaration of its purpose. Except for such purpose, it would be wholly irrelevant and outside the issues of the trial. Clearly it is an attack upon the credibility of the witness.

"Impeaching evidence" has been defined as follows:

"Evidence impeaches a witness when it assails his general credibility or otherwise weakens the force of his testimony and detracts from the weight to be given to it, without having of itself probative value as original evidence upon the matter at issue." Keister v. Rankin, 34 App. Div. 288, 54 N. Y. Supp. 274.

The admissibility of proof of general reputation, either for or against a witness, is a subject that has been of frequent consideration by both the courts and text-writers. Its many ramifications, dependent upon the manner of raising the question, the character of the action in which it is raised, and the effect of various statutory enactments, have furnished a fertile field for discussion; but the decisions seem to have left the subject in uncertainty, in many phases.

Most of the judicial expressions in this connection have been written in criminal cases, and such are to be read with that fact in mind, as the rule in criminal cases, where the witness sought to be assailed or sustained is the defendant, varies much from that applicable to civil actions.

It is well understood that in either a civil or criminal case the ordinary witness, by taking the stand, subjects himself to attack, upon his credibility, both by cross-examination and by direct testimony from others, as to his reputation, both generally and as to his truth and veracity. The issue of credibility is collateral, in a sense, it is true; but upon the weight to be given the evidence of witnesses depends the proper solution of the real issue being tried, and hence this subordinate issue has been found beneficial and of assistance, in the determination of the main issue.

It is equally well understood that the right to sustain the credibility of one's own witness does not arise until the credibility of that witness is brought in issue by the opposing party, by direct proof derogatory of such witness.

In criminal cases, where the defendant is called as a witness in his own behalf, he occupies the same status as the ordinary witness in any case, except in two particulars.  His credibility as a witness is open to attack upon cross-examination.  Witnesses may be called by the prosecution to testify as to his reputation for truth and veracity.  He may be asked as to various acts in his past life, tending to defame him; but, unlike the ordinary witness, his general reputation (not limited to his veracity) is not open to attack by direct proof from witnesses until he himself has called witnesses to show his good general reputation. People v. Hinksman, 192 N. Y. 421, 432, 85 N. E. 676.  Being a party, he is further favored in that, while the prosecution cannot render the issue of his general reputation, he is at liberty so to do; the charge of . crime being then prosecuted, being deemed such an assault upon his general reputation, as opens the door for him to sustain that reputation.

These distinctions, in favor of the testifying defendant in a criminal case, are said to rest upon the statute which makes such defendant a competent witness in his own behalf, and which omits to declare his general reputation in issue, by reason of his being sworn.  Code Criminal Procedure, § 393; People v. Hinksman, supra, 192 N. Y. page 431, 85 N. E. 676.

With these distinctions in mind, the various judicial expressions, relative to impeaching and sustaining evidence afford assistance in the determination of such questions as are here presented.

It is urged, however, that although proof of the prior conviction was impeaching proof, introduced for that purpose and properly so, that being limited to one particular act, in plaintiff's past life, it did not present any issue as to his general standing in the community.  In this connection, we are reminded that the effort, upon cross-examination of any witness, to elicit from him admissions of previous conduct upon his part, derogatory of his standing, does not permit the contradiction of his denials.  There is little force in the suggestion.  The proof of the prior conviction and its effect, as well as the manner of its proof, all depend upon the Code provision above quoted.  That statute expressly declares the effect of the evidence to be an attack upon credibility Whether elicited upon cross-examination or by direct proof, the effect is the same, and either mode of proof is expressly permitted.  It cannot be that an issue is presented, when such proof is elicited upon cross-examination, that varies in the slightest from that presented by direct proof of the same conviction, by introduction of the certificate thereof.  The scope of the attack upon the witness is therefore to be determined as though the latter mode of showing the conviction had been adopted.

A very similar situation was presented in People v. Gay, 7 N. Y. 378.  There, as here, a witness, upon cross-examination, admitted a previous conviction of crime, and it was then sought to sustain his credibility by calling witnesses as to his reputation.  Such evidence was excluded, and such ruling was sustained upon appeal; two judges dissenting.  Both the prevailing and the dissenting opinions reason to contrary conclusions from the precedents.  People v. Rector, 19 Wend.

569; Carter v. People, 2 Hill, 317; and People v. Hulse, 3 Hill, 309. Both agree, however, that the two first of such permit such sustaining evidence; a majority of the court holding that such authority was overruled by People v. Hulse, supra. Like the minority of that court, I am unable to find, in this latter case, any such overturning of such prior precedents. But I might feel bound to follow the conclusion of the majority of the court in the Gay Case, except for the fact that all such authorities antedate section 832 of the Code. By that section, for the first time, it was permitted to directly assail a witness by introduction of the certificate of his prior conviction, and to combat his denial of such conviction in like manner. From such change, I gather the legislative intent, whereby the door is opened to sustain the credibility thus attacked, by proof of good reputation.

I see no legal objection to such a conclusion, while a sense of justice supports it. In this very case, the prior conviction was some 15 years previous. In and of itself, it should have little weight as to the credibility of the witness, if, as we may assume, his manner of life had been exemplary. Nor does it seem just that he should be compelled to rest supinely under the implied charge that his character was as indicated by that conviction so long before, and not be permitted to show a reformation upon his part and that he had so conducted himself as to regain the esteem and confidence of his community.

The discussion of the court in Central Railroad & Banking Co. v. Dodd, 83 Ga. 507, 10 S. E. 206, seems peculiarly applicable to this case. It was there said, in speaking of a similar situation:

"While it was not an attempt to impeach the plaintiff in the manner pointed out in our Code, by proving that his general character was so bad that he was unworthy of belief as a witness, still it was such an attack upon his character as to weaken and discredit him to such an extent that the jury might not have believed him had he not sustained his character by the proof allowed by the court. The authorities are somewhat conflicting upon this question, but we think the fairer rule, when the character of the witness has been attacked by proof of specific immoral acts, as was done in this case, is to allow the witness to sustain himself by proof of his general good character since such acts were committed. A man may be guilty of immoral acts in his youth, and may repent and lead a pure and moral life afterwards. It would be unjust to him to allow this attack to be made upon him, and not allow him to show that since that time he had established among his neighbors a good character, such as to render him worthy of belief in a court of justice."

The real inquiry is the credibility of the witness, and we should not be prone to limit that inquiry further than is commensurate with the proper and expeditious trial of the main issue, as to which such inquiry is collateral and subservient. The Code provision permits the issue, and I think we must hold the tender of such issue carries with it a right of rebuttal.

There is, however, a further question involved, which requires consideration. The sustaining evidence offered was not limited to proof of the reputation of the witness for truth and veracity; but the inquiry went to his reputation in general, which would involve, of necessity, other traits than those of truth and veracity. The question is thereby presented of whether the issue tendered by the proof of the prior con-

viction is broader than the witness' reputation for truth and veracity and includes in its scope his reputation along all lines, going to make up his general moral standing in the community wherein he lives; for it must be conceded that the limit of plaintiff's right to sustain his credibility is fixed by the confines of the attack upon him. Just as broad as the attack, just so broad his defense thereto.

It may be urged that the statute apparently limits the issue presented by the proof of the conviction to the question of credibility as meaning the veracity and truth of the witness. If so, then the answer to such suggestion is that, except as considered as a general assault upon the reputation of the witness, proof of prior conviction has no probative force, upon the question of the credibility of the witness, in this instance. Except as it demonstrates his predeliction to crime and disregard of the rights of others, it has no force in showing a readiness to violate his oath as a witness and would, except as so considered, be wholly irrelevant; for the fact that the witness at some prior time committed forgery, in and of itself, proves nothing as to the willingness of such witness to commit perjury.

We therefore conclude that the proof of the prior conviction tendered the issue of the general reputation of the witness, which issue plaintiff had the right to meet by adducing such sustaining proof, pertinent to that issue, as he might wish. And in such conclusion, we find further support, in the well-established rule that a witness may be impeached solely by proof of a bad general reputation, and without confining such proof to his reputation for truth and veracity. Wright v. Paige, *42 N. Y. 581; Carlson v. Winterson, 10 Misc. Rep. 388, 31 N. Y. Supp. 430.

A similar conclusion was reached, as to the right of a party to sustain the credibility of his witness, when same is attacked by proof of prior conviction of crime, in Gertz v. Fitchburg R. Co., 137 Mass. 77, 50 Am. Rep. 285. In that state, as here, there is a statute permitting such proof of prior conviction and declaring its effect, and the conclusions there reached seem particularly applicable here. It is true that in that case there was presented the question only of the right to prove the witness' reputation for truth and veracity. But we do not doubt that the equal right exists to prove good character generally.

Such views lead to a reversal of the judgment and the ordering of a new trial, with costs to the appellant to abide the event of the action.