CHARLES V. BARKER, Appellant, v. FRANCES E. BARKER and Others, Defendants, Impleaded with MAUD ARCHER and Others, Appellants, and PAULINE MAY and Others, Respondents.

*(Supreme Court, App. Div., Second Dept., April 14, 1916.)*

WILL CONSTRUED—TRUST WITH REMAINDER OVER—WHEN REMAINDERMEN TAKE PER STIRPES, NOT PER CAPITA—PARENT AND CHILD—PRESUMPTION AS TO LEGITIMACY—BURDEN OF PROOF—ANNULMENT OF PRIOR MARRIAGE—HUSBAND AND WIFE—ANNULMENT BECAUSE OF FALSE REPRESENTATION AND LACK OF AGE OF CONSENT—EFFECT UPON SUBSEQUENT MARRIAGE—

MORTGAGE OF TRUST PROPERTY, WHEN NOT BINDING UPON REMAINDERMEN—
EQUITY—ADJUSTMENT OF INCREASED VALUES OF REMAINDERS—LEASE OF
TRUST PROPERTY.

A testator gave annuities to his daughters charged upon his estate which were declared to be inalienable for several lives, and the property subject to the annuities was placed in trust, income for the support and maintenance of his sons J. and S. during their lives. The will then provided that upon the death of the sons the real estate should descend " to their heirs and descendants," and if none, then to the heirs at law of the testator. It was further provided that in case of the death of either J. or S. his share of the income " shall be paid to the heirs of such decedent until the death of the survivor of my said two sons—it being my will that the same shall remain in trust as aforesaid until the death of both of my said sons." Will construed, and *held*, that on the death of the sons their descendants took *per stirpes* and not *per capita* as a class.

Where it is asserted that a person claiming under the will aforesaid as a granddaughter of the testator was illegitimate in that a month prior to her mother's marriage with the testator's son she had entered into a ceremonial marriage with another man at a time when both of them were under the age of legal consent, and it appears that the child was born after the second marriage and the parties to the former marriage never cohabited and the former husband has since remarried, the burden is upon those contesting the legitimacy to show that the first marriage had not been dissolved, for the presumption of its continuance is not so strong as the presumption of legitimacy.

The court on appeal will not consider a judgment annulling said first marriage and declaring it void *ab initio* upon the ground that it was procured upon false representations and that the parties were not of the age of consent, where the decree was procured after the judgment in the present action.

Moreover, such decree of annulment could not dissolve the marriage *ab initio*, for the statute declares that such marriage is void only from the time it is annulled.

In any event, the decree of annulment would not validate the second marriage as the latter would be void under section 6 of the Domestic Relations Law.

As the trust created by the will aforesaid had no relation to the vested remainders, the court had no authority to authorize the trustees to mortgage the real estate so as to bind the interests of the remaindermen.

But where the proceeds of the mortgage were used to erect new buildings which increased the value of the remainders, the court should make an allowance to persons who subjected their interests to the mortgage and thereby paid for the improvements.

Where the record on appeal does not furnish data from which such

allowances can be made, the case should be remitted to the Special Term for a further consideration and an equitable adjustment.

It is not necessary to except to the findings of fact in order to raise the question as to the validity of a lease of the trust property for a term of years affecting the rights of the remaindermen, and, *it seems,* that such lease violates section 107 of the Real Property Law.    •

CROSS-APPEALS by the plaintiff, Charles V. Barker, and by the defendants Maud Archer and others, from an interlocutory judgment of the Supreme Court in favor of certain of the defendants, entered in the office of the clerk of the county of Kings on the 21st day of April, 1915, upon the decision of the court after a trial at the Kings County Special Term.

The plaintiff and the defendants Clifford J. Barker, Ethel B. Miller and Maud Archer appeal, among other things, from the provision of said judgment which decrees that the defendant Beatrice Arabelle Barker has an interest in the real property involved in this action. The defendant Samuel P. Barker, Jr., appeals from the whole of said interlocutory judgment. The defendant Beatrice Arabelle Barker appeals, among other things, from the provision of said judgment which decrees that the defendants Pauline May and Nathan Levy, as executors, are entitled to have a lien on certain of the property described, and that the share of the plaintiff in the premises is a one-half interest. She also gives notice of an intention to bring up for review an order herein, entered in the office of the clerk of the county of Kings on the 7th day of January, 1915, denying her motion to set aside the verdict of a jury made at Trial Term, pursuant to the direction of the court on a special issue framed herein.

Hugo Hirsh (Emmanuel Newman and Benjamin Reass with him on the brief), for the plaintiff.

Andrew F. Van Thun, Jr. (William A. Kirk with him on the brief), for the defendants Maud Archer and others.

Charles L. Craig, for Madelaine E. Damon, guardian *ad litem* for the defendant Samuel P. Barker, Jr.

Robert H. Haskell (James M. Gorman with him on the brief), for the infant defendant Beatrice Arabelle Barker.

THOMAS, J.— The testator, dying in 1875, gave by will to his daughters annuities charged on his estate, declared inalienable during several lives, and his property, subject thereto, in trust to apply the income to the education, support and maintenance of his sons John and Samuel during their lives, and added: "And on their deaths the same shall belong and descend (the real Estate in fee) subject as aforesaid to their heirs and descendants — and if none, then to my heirs at law, and in case of the death of either said John A. G. or Samuel P. then his share (one half) of the income or profits shall be paid to the heirs of such decedent until the death of the survivor of my said two sons — it being my will that the same shall remain in Trust as aforesaid until the death of both of my said sons." The sons are dead. John left a son, the plaintiff, and Samuel sons, and daughters other than the annuitants, and a granddaughter, Beatrice A. Barker, if she is the legitimate child of Charles S. Barker, who predeceased his father, Samuel. The trustees, in March, 1906, pursuant to order of the court, executed a mortgage on certain of the property for $30,000. There are three questions: (1) Does John's son take one-half of the remainder, or do the heirs of John and the heirs of Samuel take as a class; (2) is Beatrice A. Barker the legitimate child of Samuel's son Charles and so entitled to take as one of his heirs; (3) is the mortgage a valid lien upon the interests of the infants Samuel P. Barker, Jr., and Beatrice A. Barker, if the latter is entitled to take? It was decided correctly that the heirs of John and Samuel took *per stirpes* and not *per capita*.*

* See 92 Misc. Rep. 390.— [REP.

If it be considered only that the whole estate was charged with
annuities and inalienable for some lives, and that subject to
such charge it was given in its entirety to trustees for the com-
mon maintenance and education of John and Samuel without
suggestion of separate interests, an opposite conclusion would be
aided. The provision that the testator's heirs should take in
default of " their heirs and descendants " raises the question
whether the testator intended his heirs to take, if one life bene-
ficiary died without leaving issue, and at least does not weaken
the construction that the combined heirs of each of the two
brothers take equally. However, John and Samuel could not
have common descendants, and the declaration that each son
took one-half of the income and the provision that his heirs
should take it after him indicate the testator's intention to
divide the estate into two shares, one for each line of descent,
and that the heirs of each son should take correspondingly in
the *corpus.* It has been suggested that where a trust inter-
venes, the fact that a person takes a beneficial interest in the
income is not evidence that he took of the principal. However,
in the present case, the heirs of a son dying before the trust
ends, to whom the income is given, are at least presumptive
takers of some interest in the remainder, and I conceive of
no reason for allotting them a one-half share in the income
unless it was meant thereby to give them one-half of the estate
out of which it arose, to vest in possession at the termination
of the trust. It is not to be thought that the testator intended
to endow for a period John's descendants with half of the profits
of the estate and then take it away in part to augment the
interests of the descendants of the other son. It is suggested
that the testator expectably would desire to benefit equally all
of his grandsons. But he showed his intention to benefit them
*per stirpes,* as he gave the heirs, however few, of one dying,
half of the usable income, while he kept all the other grand-
children, however many, to the other half. But his first con-
cern was his sons, and he naturally foresaw each as the head

of a family and thought of each dying and leaving descendants, and for each family as a unit he made provision for one-half of the income. The appellants, as to this phase of the case, rely upon Bisson v. West Shore Railroad Co. (143 N. Y. 125). But the difference is essential. In that instance there was but one life beneficiary, the widow, and her heirs and her husband's heirs, not their descendants, were grouped into one class to take and, being so unified, it was understandable to add " their heirs and assigns forever share and share alike." The very technical words significant of equality were used there but not here. The next question relates to the legitimacy of Beatrice Arabelle Barker. Beatrice A. Barker's mother, now Mrs. Dorgeloh, was married to one Murtha in the month of May, 1897, prior to her marriage to Beatrice's father in June of that year. The fact that Mrs. Dorgeloh, a defendant here, entered into the first marriage was determined, and, as I think, correctly, by the judgment entered upon a verdict directed by the court. The other issues in this action of partition were then tried at Special Term and full credit given to the finding of the first ceremonial marriage. But it was considered that, although the first marriage was at one time a fact, the parties who accused the legitimacy of the issue of the second marriage must show that the first marriage at the time of the second marriage had not been dissolved, and that both parties to it were competent to contract it. The evidence shows that each party to the first marriage was under the age of consent, as the woman was less than sixteen, and the man less than eighteen years of age; that their acquaintance had been slight; that they saw each other but casually shortly after the ceremony; that they never cohabited or consorted as husband and wife; that the man married again and was living with the party to that marriage; that the woman Dorgeloh married Charles Barker shortly after her first marriage, and that the parties lived together for a number of years, until the second husband's death, and that Beatrice A. Barker was the issue of such marriage. So the second marriage

was valid, unless the first marriage was an impediment. Under such circumstances the burden rested upon those denying the girl's legitimacy to show that the first marriage had not been dissolved, for the presumption of its continuance was not as strong as the presumption of legitimacy. (Matter of Meehan, 150 App. Div. 681.) Murtha did testify that he had not sought to dissolve the marriage and had not received process for that purpose. But his life was wandering, and his residence ambulatory. Process might have been effectively served by publication and thereupon the marriage dissolved without his knowledge. Mrs. Dorgeloh, who had married again after the death of Barker, was a witness, but she was not questioned on the subject. Therefore, the court was privileged to indulge the presumption that the issue of the second marriage was legitimate. (Sparks v. Ross, 75 N. J. Eq. 550; Coal Run Coal Co. v. Jones, 127 Ill. 379; Pittinger v. Pittinger, 28 Colo. 308; Chancey v. Whinnery, 147 Pac. Rep. [Okla.] 1036.) Upon the argument of this appeal, proof was tendered in behalf of Beatrice A. Barker that after the judgment herein Mrs. Dorgeloh procured a judgment in this State annulling the first marriage in an action against Murtha, declaring the marriage void *ab initio* upon the ground that it was procured by false representations, and that the parties were not of the age of consent. I conclude that the record should not be received. Its effect would be to reverse, not to affirm, the finding of legitimacy, as it would show that at the time of the second marriage the first marriage had not been dissolved, for, with such judgment before it, this court could not presume that Mrs. Dorgeloh had brought an earlier action for annulment. Nor could such judgment of annulment operate to dissolve the first marriage *ab initio*. The judgment could not be broader than the statute authorizing it, which declares such marriage void only from the time it is annulled. (Dom. Rel. Law [Consol. Laws, chap. 14; Laws of 1909, chap. 19], § 7; formerly Dom. Rel. Law [Gen. Laws, chap. 48; Laws of 1896, chap. 272], § 4.) Moreover, the pro-

posed judgment of annulment would not validate the second marriage, as that when made would be void under the conditions stated in section 6 of the present Domestic Relations Law, which was section 3 of the former Domestic Relations Law. The second marriage was subject to annulment by judgment recovered pursuant to section 1745 of the Code of Civil Procedure. The next question is whether the mortgage for $30,000 is valid against Beatrice A. Barker and Samuel P. Barker, Jr. The mortgage was made in March, 1906, and the trust continued until the death of the life tenant, Samuel P. Barker, in 1912. Upon the application to the court for leave to execute the mortgage, Samuel P. Barker, Jr., an infant, was represented by a guardian *ad litem,* but Charles S. Barker, a son of Samuel P. Barker, and the father of Beatrice A. Barker, died in 1901, and I do not find that Beatrice A. Barker was a party to the proceeding. It appears that with the avails of the mortgage a new building was erected on the property, and that the rents were thereby increased from $10,500 a year to $25,000 a year. It was probably the duty of those who represented the infants in this action to call attention to the attempt to mortgage their interest in the remainders, notwithstanding the marked benefit accruing to them from the building. It is insisted in their behalf that the court had no authority to authorize the mortgage. On the other hand, it is urged that the court was enabled to authorize the mortgage by the former Real Property Law, sections 85 and 87, as amended by chapter 136 of the Laws of 1897. That the court did not have the power before such amendment to authorize the trustee to mortgage the remainders, and that the statute did not intend to confer it, was decided, in 1895, in Losey v. Stanley (147 N. Y. 560). In 1911 it was decided in Matter of Easterly (202 N. Y. 466, 474) that section 105 of the Real Property Law (Consol. Laws, ch. 50; Laws of 1909, ch. 52 [formerly Real Prop. Law (Gen. Laws, ch. 46; Laws of 1896, ch. 547), § 85, as amd. by Laws of 1897, ch. 136; and Laws of 1898, ch. 311, and also Revised Statutes, pt. 2, ch. 1, tit. 2 (1 R. S. 730), § 65,

as last amd. by Laws of 1895, ch. 886]) "deals with the trust estate only, and an order for a sale pursuant to the statute should not purport to convey the independent vested estate in the remaindermen." Later, upon a motion for reargument (Matter of Easterly, 204 N. Y. 586), the attention of the court was called to the amendment made by chapter 242 of the Laws of 1907 to section 87 (now section 107) of the Real Property Law, and the court disclaimed any consideration of such amendment in reaching its decision, but it was said that if the amendment "has the effect claimed by counsel for the respondent nevertheless the decision on this appeal should not be changed." I consider that the trust had no relation to the remainders, and that the court could not authorize the trustee to mortgage that to which he had no title. As concerns the infant, Beatrice A. Barker, there was no attempt to bind her interest, and in my judgment Samuel P. Barker as a remainderman was not affected by the order. However, it would be quite unjust to allow the infants to profit by the value of the land enhanced by the new buildings, and it is, I think, within the power of the court to make an allowance to such of the tenants in common as have subjected their interests to mortgages and thereby paid for the improvements. (Ford v. Knapp, 102 N. Y. 135.) The present record does not furnish data that enable proper disposition of the matter. The order in the mortgage proceeding authorized two funds for two of the daughters. Perchance it may be necessary to take that into consideration. It is necessary to remit the case, so far as this single question is concerned, to the Special Term for further consideration and for an equitable adjustment of the shares as the facts may warrant. I think that it would be greatly for the interests of the infants if the status of the mortgage as established by the judgment could be left undisturbed, and thereby the result indicated reached. It was found that the trustee had in 1908 demised the property to Bedell Brothers for the term of ten years from 1911, and there was

a conclusion of law that such lessee firm is entitled to and has a lease for such term. To the conclusion of law there is an exception. It was not necessary to except to the finding of fact in order to raise the question of the effect of the lease upon the interests of the remaindermen. The lease for the given term seems to be violative of section 106 of the Real Property Law. The Bedell Brothers are not before the court, and it is deemed advisable that the question be remitted to the Trial Term to the end that the question may be determined with Bedell Brothers before the court.

The interlocutory judgment, modified in conformity herewith, should be affirmed, without costs to any of the parties.

JENKS, P. J., MILLS, RICH and PUTNAM, JJ., concurred.

Interlocutory judgment modified in accordance with opinion, and as modified affirmed, without costs to any of the parties.